Stacy **BALL, Individually and as Independent Executrix of the Estate of L. H. Ball, Deceased, Appellant,**

v.

**Ike PARKS et al., Appellees.**

No. 15894.

Court of Civil Appeals of Texas.

Fort Worth.

April 25, 1958.

Rehearing Denied May 23, 1958.

W. E. Fitzgerald, Wichita Falls, Smoot & Smoot, and Geo. A. Smoot, Wichita . Falls, for appellant.

Donald & Donald, and J. M. Donald, Bowie, for appellee Ike Parks.

H. M. Muse, Wichita Falls, for appellee Juanita Willingham.

MASSEY, Chief Justice.

From a judgment against Mrs. Stacy Ball, individually and as Independent Executrix of the Estate of L. H. Ball, her deceased husband, Mrs. Ball has appealed. In part, the judgment was in favor of Mrs. Juanita Willingham for $400 as the amount by which there had been an overpayment on a mortgage in the form of a deed. The judgment was also in favor of Ike Parks for title and possession of 75 acres of land in Montague County, Texas, upon Parks' pleadings in the nature of trespass to try title against Mrs. Ball, individually and as executrix, and also against Mrs. Willingham, individually and as Independent Executrix of the Estate of T. R. Willingham, her deceased husband.

Judgment reversed and rendered.

A history of the events giving rise to the controversy between the parties is to be found in our prior opinion, Ball v. Parks, 1955, 278 S.W.2d 189, in connection with a former appeal. The judgment of the trial court was reversed pursuant to that opinion and remanded for retrial upon the premise that it was supported by testimony admitted in contravention of Vernon's Ann.Tex. Civ.St., Art. 3716, the "dead man's statute". Between the time of our judgment on the appeal and the retrial of the case in 1957, Mr. Overstreet conveyed all his interest in the subject property to his co-plaintiff, Ike Parks, under circumstances purporting to eliminate him as a party to the suit. Mrs. Willingham conveyed all her individual right, title and interest in and to the subject property, without warranty, to Mr. Parks and assigned any and all her right, title and interest to any sums recoverable by her suit for overpayments on indebtedness secured by mortgage, in the form of a deed, to her attorney, H. M. Muse. Obviously a part of the reasons for these actions was to remove the inhibitions presented by the "dead man's statute," the success of which poses serious questions tempting our discussion. In view of what we consider the controlling matters on this appeal, however, such questions will be disregarded.

On the face of the record before us, by which our opinion is necessarily controlled, it has been our conclusion that material factors for consideration are the Statutes of Conveyances, of Fraud, of two-year Limitations and of four-year Limitations, Vernon's Ann.Civ.St. arts. 1288, 3995, 5526, 5529. In their application we necessarily must keep in mind the original form of action brought, the alteration thereof into the status in which the original plaintiffs, or at least Mr. Parks, were to be found on the retrial following our former opinion. We also must keep in mind the form of the cross-actions of the two sets of defendants, —in the case of the Balls as per their complaint against Overstreet and Parks, and as per their complaint against the Willinghams,—and upon the retrial as per only the cross-complaint of Mrs. Willingham, individually only, against the Balls.

In the foregoing paragraph we have disregarded the fact that T. R. Willingham died and Mrs. Willingham became independent executrix of his estate before the first trial. We have also disregarded the fact that between the time of the first trial and the time of the retrial L. H. Ball died and Mrs. Ball became the independent executrix of his estate.

Upon the occasion of the former appeal, Overstreet and Parks were plaintiffs. They were also cross-defendants by complaint of Mrs. Ball and her husband, then still alive. The cross-complaint was in the nature of trespass to try title, filed November 3, 1949. It was therein alleged that T. R. Willingham was not the agent of the Balls or either of them, nor had any author-

ity to contract for sale or to sell upon any terms whatever to Overstreet or Parks or anyone the property in question, it constituting property of the Balls and not the property of T. R. Willingham. It does not appear that service of citation was obtained upon Mrs. Willingham until about November of 1950, at which time her husband was dead and she was Independent Executrix of his estate. She first answered, individually and as executrix, on November 18, 1950. In such pleading she asserted that the Balls had theretofore received more that the amount due them under the transaction and agreement of 1937 when she and her husband had delivered to them a deed which was intended to be a mortgage. However, no relief was prayed for by reason thereof. She did assert and pray for an adjudication of title to the premises as between the Balls and herself and the estate for which she was executrix. She did not ask for any citation to issue and no part of her pleading is in form anything other than an answer to the petition of Overstreet and Parks. From its language it is quite obvious that the attorney who prepared it was acquainted with the contentions of record in the pleadings filed by Mr. and Mrs. Ball which we have outlined above, it being alleged therein that the Balls held no interest in the property and that title in them rested in trust for Mrs. Willingham, her husband having become deceased, etc.

In the latter part of 1952 Mrs Willingham (individually and as executrix) first filed a cross-action against the Balls. She obviously sought thereby the cancellation and avoidance of the deed of 1937. Apparently nothing was plead relative to the quitclaim deed of 1943, nor any relief requested by way of its cancellation or avoidance. On June 10, 1953, the Balls filed a cross-action against Mrs Willingham, individually and as executrix, alleging the fact of controversies between the parties prior to May 20, 1943, and the settlement thereof and execution of the 1943 quitclaim deed pursuant to such settlement.

Prayer was for a declaratory judgment fixing, declaring and decreeing the force and effect of the quitclaim deed, and for ancillary relief. The only answer of Mrs. Willingham to be found in the record to this cross-action shows to have been filed in October of 1956. Therein it, for the first time, appears that she attacked the interest asserted by the Balls pursuant to the quitclaim deed of 1943. The T. R. Willingham Estate was seemingly dropped as a crossplaintiff, for Mrs. Willingham's allegations are in her individual capacity only, and clearly in denial that her deceased husband ever had any interest in the property. She alleged that the quitclaim deed was of no force and effect and was procured by fraud and fraudulent representations and was without consideration. Her further pleading was in accord with the allegations of Parks in the nature of trespass to try title in his pleading filed three days later. It is by some necessary implication that we construe Mrs. Willingham's pleading as being in cross-action for the rescission of the purported transaction incident to the quitclaim deed and the quitclaim deed itself, but she does thereby clearly seek a judgment for an accounting from Mrs. Ball, individually and as executrix, and for the amount by which the indebtedness originally owing incident to the 1937 transaction had been overpaid.

■ From the evidence in the case it is noticed that a part of the consideration delivered by the Balls to the Willinghams for the 1943 quitclaim deed was an undivided interest in and to certain lots in the City of Wichita Falls. The interest was subsequently disposed of for a sizeable sum of money by the Willinghams, hence it was of course impossible for Mrs. Willingham (individually or as executrix) to tender such "in kind". No tender of any kind was made, it being alleged that there was no consideration for the quitclaim deed. The contention fails in view of the evidence.

To this pleading by Mrs. Willingham (as an individual) filed October, 1956, in cross-

complaint against Mrs. Ball and the Ball Estate, answer was filed setting up the bar of the two-year and four-year statutes of limitation to the suit for accounting and for any amount claimed to have been received over the indebtedness Mrs. Willingham asserted was owing the Balls, and the four-year statute of limitation was asserted in bar of Mrs. Willingham's attempt to rescind the quitclaim deed.

Mrs. Willingham answered by a supplemental pleading filed in 1957, contesting any limitation bar of her suit for accounting and for amounts by which the original debt owing had been overpaid, asserting that the Balls had promised to account therefor and that there had been no repudiation of such agreement. She plead against the asserted bar (of the four-year statute) to her attempt to set aside the quitclaim deed for the same reasons, and because there had been no repudiation of the trust relation incident to both the transaction of 1943 when the quitclaim deed was executed and to the transaction of 1937 when the original deed was executed.

In addition to the pleading filed by the Balls on November 3, 1949, and previously mentioned, on January 2, 1953, they filed as against Mrs. Willingham and the Willingham Estate a cross-action in which they asserted that the subject property was held under authority of the deed of 1937, coupled with a denial that such was intended as a mortgage. As heretofore noticed, it was by a supplement thereto, filed June 10, 1953, that the quitclaim deed was set up as additional evidence of title and as authority under which they claimed.

■■ Considering initially the case of Mrs. Willingham against Mrs. Ball and the Ball Estate, we have arrived at the conclusion that unless it be possible to set aside and avoid the quitclaim deed of 1943 and the transaction to which it was incident, it will stand as valid and subsisting in the establishment that such title as theretofore existed in the Willinghams, or either of them, was thereby conveyed in fee simple over unto L. H. Ball, now deceased. Chicago, T. & M. C. Ry. Co. v. Titterington, 1892, 84 Tex. 218, 19 S.W. 472; Neill v. Pure Oil Co., Tex.Civ.App. Dallas 1937, 101 S.W.2d 402, error refused. In order to set it aside the necessity would exist to plead and prove the elements of actionable fraud. See 20-A Tex.Jur., p. 19, "Fraud and Deceit," sec. 7, "Elements Necessary for Actionable Fraud," and sec. 15 "—In Real Estate or Stock Transactions." Furthermore, since any opportunity to affirm the contract and sue for damages has been abandoned, but instead it is a rescission which is necessarily sought, it would be an essential part of the action sought to be prosecuted therefor that a tender be made of the consideration delivered up by the Balls in the alleged fraudulent transaction, in the restoration of the status quo as of the time thereof. 20-A Tex.Jur., p. 141, "Fraud and Deceit," sec. 78, "Restoration of Status Quo." McDonald v. Simons, Tex.Com.App.1926, 280 S.W. 571; Guadalupe-Blanco River Authority v. City of San Antonio, 1947, 145 Tex. 611, 200 S.W.2d 989, 997.

The pleadings of Mrs. Willingham might be construed to have embraced the elements of actionable fraud, and the evidence might be considered as having raised issues for the jury thereon. However, there was no tender whatever in any attempt to restore the status quo, and the undisputed evidence in the case shows that the consideration (or substitute therefor) which should have been tendered did actually have substantial value and was far from worthless, as claimed.

Unchallenged by either Mrs. Willingham or Parks or Overstreet were issues in the charge which assumed, without putting the question, that the Willinghams did receive as grantees in a deed to real estate consideration incident to the exchange of the quitclaim deed, and the evidence is undisputed to the effect that they subsequently so dealt with it that it could not have been

returned in kind. Indeed, the deed itself recited that as consideration therefor the Willinghams had executed a quitclaim deed to the property here in question.

■ The suit in cross-action by Mrs. Willingham, individually, was commenced October 15, 1956, more than four years subsequent to the time she first appeared in the record, both individually and as executrix, as a defendant to the suit of Overstreet and Parks. The Balls were defendants along with her to Overstreet's and Parks' suit. As of November 18, 1950, when she answered in such suit, Mrs. Willingham at least had constructive notice that the Balls were asserting claim to the sole and exclusive title, both legal and equitable, if indeed her answer does not foreclose the taking of any contrary position as a matter of fact, for they were her co-defendants whose pleadings were already on file. Assuming there was no inhibition theretofore existing to Mrs. Willingham's title claim, this notice put her on inquiry as to the state of the record of title and operated as notice in constructive repudiation of any agreement that the Balls were trustees for her or any other person or estate, but were holding adversely. The record of title included the quitclaim deed of 1943, which was placed of record with the county clerk of Montague County, Texas, on the day after it was executed.

In view thereof, we are of the opinion that despite the issues made upon the matter of fraud, trust, etc., attack upon the title of Mrs. Ball and the Ball Estate would be barred by the plea of limitation. Furthermore, we are of the opinion that despite the validity of Mrs. Willingham's cross-complaint for accounting and for recovery of amounts by which indebtedness was overpaid, recovery therefor would be barred by the two and four year statutes of limitation. The trial court erred in not sustaining the pleas of limitation. We will treat the case in its further aspects as though they had been properly sustained.

■ With the pleas of limitation sustained we can safely say that the record established title to the property in question in L. H. Ball, if not in Mrs. Ball as well, as of the date of the quitclaim deed in 1943. There having been no conveyance by the Balls since that time, and no authorization in writing giving the right to any third person to convey the property, it is quite clear that the most that could be said for the authority of T. R. Willingham as of and immediately prior to the transaction with Overstreet and Parks in 1948, when the sales contract was executed, would be that entitling him to bind them to an executory contract of sale. There being no writing authorizing a conveyance of land, no contract *of* sale could be made, only a contract *to* sell. Vernon's Ann.Tex.Civ. St., Title 31, "Conveyance," Art. 1288, "Instrument of conveyance."

We here note that between the time of the first appeal and the time of the retrial of the case Overstreet conveyed, without warranty, all his claimed right, title and interest in and to the subject property, or to causes of action relative to the same, over to Parks. Parks thereafter filed a pleading upon which he went to trial upon the retrial of the case in which he abandoned any suit for specific performance of the contract of 1948 and proceeded on the theory that he received title to the property by the contract and a subsequently executed deed, without warranty, from Mrs. Willingham, and couched his claim on a suit in trespass to try title. As such, his cause of action fell along with that of Mrs. Willingham, who had no title she could establish.

In view of Parks' failure in the establishment of a premise for maintaining a trespass to try title action, his suit would have reverted to a suit for specific performance to convey land had his pleading and prayer for such alternative relief subsisted, which it does not. Overstreet's last filed pleading does have such a prayer and pleading to support it. He was never dismissed as a party to the suit, and, of course, a cross-action had been plead against him. The evidence established that his interest had passed to Parks. No relief to him was granted in the judgment.

As a suit for specific performance to convey land the Statute of Frauds is controlling, and it is relied upon by Mrs. Ball, individually and as executrix. In a test of the sufficiency of the description of the property contracted to be conveyed it is to be remembered that there is a difference in a contract of sale and a contract to sell. In an executed contract, or contract fully performed by one party, the same, if a contract of sale, will pass whatever interest the grantor may have in the land unless words are used showing an intention to pass a less estate. But here the contract could not be a contract of sale because at all times the Balls resisted any performance by adverse parties, and in view of the inhibition of Art. 1288, supra, and it must unquestionably be treated as a contract to sell. As such it is to be tested as one where the purchaser offers to purchase and "tenders" full performance to the seller, of whom specific performance is demanded. In view thereof the language of the contract is to be tested by the Statute of Frauds.

The Statute, V.A.T.C.S., Art. 3995, section 4, serves as a bar to the maintenance of an action to compel a defendant to sell real estate unless the promise or agreement to do so, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him lawfully authorized. It is to be remembered that for the purposes of this discussion we are *assuming* that T. R. Willingham, deceased, was in fact the agent for the Balls at time the contract to sell was executed in 1948.

It is settled in our law that the writing referred to must be sufficiently definite to make possible an identification of the land contracted to be sold with reasonable certainty without oral testimony and must furnish in itself, or by reference to some other writing, the means or data by which the particular land to be conveyed can be identified. In this case the written language of the contract refers to no other writing so we may direct our attention to it alone. Thereby the land is described only as real property "Lying and situated in Montague County, Being Block 78 Hill County School Land." The suits of the parties and the evidence in the cause make it plain that it was intended by the Willinghams and by Overstreet and Parks that the property to be conveyed was a 75 acre tract off the southeast part of a 90 acre tract in "Block 78 Hill County School Land," Montague County, Texas. We are therefore of the opinion that the description to be found in the written language of the contract does not meet the test of the Statute of Frauds. Though the land might have been identified by resort to other writings, as for example the deed records of the county (even here we would necessarily assume that the county was in the State of Texas), and perhaps be sufficient for a contract of sale, no such record or writing is referred to by the written language of the contract itself and in a test by the provisions of the Statute could not be referred to. The authorities speak clearly to the effect that where a tract of land out of a larger tract is insufficiently described, though the larger tract is itself properly described, a contract to convey the same is unenforceable. Here we believe that there is no description of the smaller tract whatever in a larger tract insufficiently described. See cases under 20-A Tex.Jur., p. 399, "Frauds, Statute of," sec. 126 "—Description."

From what we have stated aforesaid, we have reached the following conclusions: (1) Mrs. Willingham's judgment for accounting and recovery of overpayment must be reversed and rendered because of operation of Statutes of Limitation; (2) Parks' judgment in trespass to try title must be reversed and rendered because of the failure of the record to show any title received by conveyance or contract of sale from either Mrs. Willingham or her deceased husband in view of the Statutes of Limitation to be applied and inhibiting either the declaration that the 1937 deed was in fact a mortgage or a rescission of the

1943 quitclaim deed from the Willinghams to the Balls; and (3) Overstreet, though cut off from the judgment through conveyance of all right, title and interest in and to the property to Parks, nevertheless would be unable to recover judgment under his pleadings in any event for all the same reasons inhibiting any judgment for Parks, plus the fact that the Statute of Frauds inhibits enforcement of the contract of 1948. It follows therefore that the proper judgment to be rendered (the necessary reference having been made to the pleadings and to the points of error in preservation of any right to relief by each and all parties) is that decreeing and quieting title to the subject property in Mrs. Stacy Ball, individually and as independent executrix for the estate of L. H. Ball, deceased.

Judgment reversed and rendered in decree of title, and quieting title, as above stated.