The STATE of Texas,

v.

James Christopher HUNTER, Appellee.

No. 2–01–475–CR.

Court of Appeals of Texas, Fort Worth.

March 20, 2003.

---

Tim Curry, Crim. D.A., Charles M. Mallin, Asst. Crim. D.A. and Chief of the

**308**

Appellate Division, Tanya S. Dohoney, Michael Gordon, Shane Lewis, Asst. Crim. D.As., Fort Worth, for appellant.

James Christopher Hunter, pro se.

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The State appeals from the trial court's order suppressing less than two ounces of useable marijuana seized from appellee James Christopher Hunter's truck after he was stopped for a missing front license plate. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(5) (Vernon Supp.2003). In five points, the State argues that the search was constitutionally sound and that, in any event, Hunter consented to the search of his truck. The determinative issue in this appeal is whether the State met its burden to establish by clear and convincing evidence that Hunter's consent was voluntary. Because we must defer to the trial court's implied historical fact findings underpinning this issue, we cannot conclude that the trial court abused its discretion in granting Hunter's motion to suppress. Accordingly, we will affirm the trial court's suppression ruling.

### II. BACKGROUND FACTS

On March 19, 2001, Grapevine Police Officer Jason Keller was running a stationary radar facing southbound traffic on Road 2499. He observed Hunter's truck traveling northbound and saw that it did not have a front license plate. Officer Keller drove up behind Hunter's vehicle, turned on his blue and red lights, and activated the video camera mounted on his patrol car. The video tape shows that Road 2499 is curbed and that a fence runs along the right side of the road.

Hunter continued to drive approximately half a mile, but turned right and stopped at the first opportunity. The road that Hunter turned right onto appears on the video tape to be under construction. There is a break in Road 2499's curb, and the road to the right is curbed where it meets Road 2499. The road to the right itself, however, is dirt and has deep ruts in it. Officer Keller pulled his squad car in directly behind Hunter's truck, blocking Hunter in.

Officer Keller testified that when he approached Hunter and asked for his driver's license, Hunter "appeared to be a little bit nervous, and his speech was somewhat nervous. He avoided eye contact." Officer Keller asked Hunter for his driver's license and proof of insurance, and Hunter responded, "Sure, sorry I drove so far—I just kinda—I didn't want to...." Before Hunter could finish, Officer Keller interrupted him saying, "That's fine." Hunter provided his driver's license to Officer Keller. Officer Keller asked Hunter if he was aware his truck was missing its front license plate and told Hunter he would just issue him a warning as long as everything checked out.[1]

Hunter did not have red or glassy eyes. Officer Keller did not smell any odor or see anything suspicious in or about Hunter's truck. Officer Keller took Hunter's license, returned to his patrol car, and ran Hunter's license to determine if any outstanding warrants existed for Hunter's arrest. Finding no outstanding warrants,

---

1. We note that at various times Officer Keller turned off the microphone recording the au- dio portion of the stop.

Officer Keller walked back to Hunter's truck.

At this point, the video tape shows that Officer Keller handed something to Hunter through the open driver's side window, shined his flashlight into the interior of the truck, and asked Hunter, "I know you said it took you a while to pull over and everything like that—you don't have anything illegal in the car, do you?" When Hunter responded, "No," Officer Keller said, "You don't mind if I take a quick look, do you?" Hunter said, "Sure." Officer Keller told Hunter to stand at the front of the truck, "fac[ing] those concrete barrels." Officer Hunter found less than two ounces of marijuana in the truck and arrested Hunter. The trial court granted Hunter's motion to suppress.

### III. STANDARD OF REVIEW

At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). Thus, the trial court may disbelieve any portion of a witness's testimony, even if the testimony is uncontroverted. *Ross*, 32 S.W.3d at 855.

In reviewing the trial court's decision, an appellate court does not engage in its own factual review. *Romero*, 800 S.W.2d at 543. Instead, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In the absence of explicit findings, we as-

sume that the trial court made whatever appropriate implicit findings the record supports. *Ross*, 32 S.W.3d at 855–56; *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000). The voluntariness-of-consent issue is a mixed question of law and fact. *See Vargas v. State*, 18 S.W.3d 247, 253 (Tex.App.-Waco 2000, pet. ref'd).

Here, at the suppression hearing, the State presented the testimony of the arresting officer, Officer Keller, the video tape of the stop recorded from the video camera mounted in Officer Keller's patrol car, and a map showing that the stop occurred in Denton County. This evidence, if believed by the trial court, could have been sufficient for the trial court to conclude that Hunter's consent to the search was voluntary. *See, e.g., Vargas*, 18 S.W.3d at 252. The trial court, however, expressly disbelieved portions of Officer Keller's testimony[2] and impliedly disbelieved other portions. Thus, we review the voluntariness-of-consent issue under the second *Guzman* category: an almost total deference to the trial court's ruling. *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89; *cf. Vargas*, 18 S.W.3d at 253 (applying the third *Guzman* category, a de novo review with deference to the trial court's historical facts, when the trial court *denied* the suppression based on uncontroverted facts). Moreover, if the trial judge's decision is correct on any theory of law applicable to the case, we will sustain the trial judge's decision. *Ross*, 32 S.W.3d at 855–56.

### IV. THE VOLUNTARINESS OF HUNTER'S CONSENT

■ The State's fifth and sixth points claim that the trial court erred by grant-

---

**2.** The trial court did not believe Officer Keller's testimony that Hunter was free to leave

prior to the search.

ing Hunter's motion to suppress because an officer does not need reasonable suspicion to request consent to search and because Hunter's consent to the search of his truck was valid. We agree that an officer may request permission to search even absent reasonable suspicion of criminal activity. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). The fact that an officer may request permission to search a vehicle absent reasonable suspicion, however, does not answer the controlling question in this appeal— whether Hunter's consent to Officer Keller's search was voluntary.[3] We now turn to that issue, the State's sixth point.

The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a result, searches made without warrant are generally per se unreasonable. *Mendoza v. State*, 30 S.W.3d 528, 531 (Tex.App.-San Antonio 2000, no pet.). When a search without a warrant is made, the State bears the burden to show that the search falls within one of the narrow exceptions to the warrant requirement in order for the search to be constitutionally permissible. *Id.* A warrantless search and seizure can be justified under four exceptions: the plain view doctrine, consent, the emergency doctrine, and the automobile exception. *U.S. v. Armendariz–Mata*, 949 F.2d 151, 153–54 (5th Cir.1991), *cert. denied*, 504 U.S. 945, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992); *Morgan v. State*, 906 S.W.2d 620,

629 (Tex.App.-Fort Worth 1995, pet. ref'd), *cert. denied*, 519 U.S. 865, 117 S.Ct. 174, 136 L.Ed.2d 115 (1996).

To show that the search was made with the property owner's consent and trigger the consent exception to the warrant requirement, the State must prove by clear and convincing evidence, based on the totality of the circumstances, that the defendant gave consent freely and voluntarily.[4] *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000); *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). If consent is obtained through duress or coercion, whether actual or implied, that consent is not voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim. App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

"Voluntariness" goes beyond the literal meaning of "a knowing choice." *Reasor*, 12 S.W.3d at 817. Unless a person is unconscious or incapacitated, all statements made could be considered "voluntary in the sense of representing a choice of alternatives." *Id.* Under this view, even physically-forced consent would be voluntary because, in theory, the suspect had a choice—either consent to the search or be beaten. *Id.* On the other hand, we do not ask whether the consent would have been given "but-for" the police actions or inquiries. Under this view, "virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind." *Id.*

---

**3.** Thus, the State's fifth point does not entitle it to a reversal of the trial court's suppression ruling.

**4.** Although the United States Constitution only requires the State to prove the voluntariness of consent by a preponderance of the

evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Carmouche*, 10 S.W.3d at 331 (citing *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App. 1997)).

■ In determining whether a defendant's will was overborne in a particular case, trial courts must assess the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. *Id.* at 818; *see also Carmouche,* 10 S.W.3d at 331; *Meeks,* 692 S.W.2d at 510; *White v. State,* 21 S.W.3d 642, 645 (Tex.App.-Waco 2000, pet. ref'd). By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. *Reasor,* 12 S.W.3d at 817.

■ Some relevant factors in determining the voluntariness issue are the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *Id.* at 818. Additionally, testimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the consent's voluntary nature. *Martinez v. State,* 17 S.W.3d 677, 683 (Tex. Crim.App.2000). A police officer's failure to inform the accused that he can refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused's consent involuntary. *Johnson v. State,* 68 S.W.3d 644, 653 (Tex.Crim.App.2002). Nor is consent rendered involuntary merely because the accused is under arrest. *Id.* By the same token, consent is not established by showing no more than acquiescence to a claim of lawful authority. *Carmouche,* 10 S.W.3d at 331.

Hunter's motion to suppress challenged the warrantless search of his truck under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; Article I, sections 9, 10, and 19 of the Texas Constitution; and articles 1.04, 1.05, and 1.06 of the Texas Code of Criminal Procedure. U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I §§ 9, 10, 19; TEX.CODE CRIM. PROC. ANN. arts. 1.04, 1.05, 1.06 (Vernon 1977). The State stipulated that the search of Hunter's truck was a warrantless search. Thus, the State bore the burden to show that the search fell within one of the narrow exceptions to the warrant requirement. *Mendoza,* 30 S.W.3d at 531.

■ The State chose to proceed on the ground that the search of Hunter's truck was valid because Hunter consented to it. Hunter raised the validity of the search under the Texas Constitution, so the State was required to prove the voluntariness of Hunter's consent by clear and convincing evidence. *See Carmouche,* 10 S.W.3d at 331. As we previously mentioned, at the suppression hearing, the State presented the testimony of the arresting officer, Officer Keller, the video tape of the stop recorded from the video camera mounted in Officer Keller's patrol car, and a map showing that the stop occurred in Denton County. The State, however, asked Officer Keller only one question concerning Hunter's consent to the search: "Mainly, did he give consent for you to search the vehicle?" Officer Keller answered, "Yes." The defense then asked Officer Keller whether, if Hunter had not consented to the search, he would have been free to leave. Officer Keller again responded affirmatively. This is the extent of the testimony in the record concerning the voluntariness of Hunter's consent. The video tape of the stop corroborates Officer Keller's version of the events, and the map is not relevant to the consent issue.

After considering the suppression hearing evidence, the trial court granted Hunter's motion to suppress. The trial court recognized that the State was asserting

the consent exception to the warrant requirement, expressly found that Hunter was not free to leave prior to the search, and granted the motion to suppress. The record reflects that Hunter was present at the suppression hearing. Thus, the trial court had the opportunity to view the characteristics of Hunter, including his age and maturity level. The trial court had the opportunity to observe Hunter's demeanor and general intelligence range. The trial court also had the opportunity to view Officer Keller's demeanor, volume of voice, appearance, and credibility. The record reflects that no constitutional advice was offered to Hunter prior to the search, nor did Officer Keller tell Hunter that he was free to leave or free to decline to consent to the search of his truck. In fact, the trial court found that Hunter was not free to leave because Officer Keller's car was blocking him in, preventing his exit onto Road 2499. The record contains no evidence of repetitive questioning, lengthy questioning, or the use of physical punishment to force consent.

Deferring, as we must, to the trial court's credibility determinations and to the historical facts impliedly found by the trial court when it granted Hunter's motion to suppress, we cannot hold that the trial court abused its discretion by concluding either that Hunter's consent was not voluntary or, as is more probable, by concluding that the State simply failed to meet its burden of establishing the voluntariness of Hunter's consent by clear and convincing evidence. *Accord Carmouche,* 10 S.W.3d at 333 (holding consent was given involuntarily when a reasonable person would not have felt they had the choice to withhold consent to search); *Reyes–Perez v. State,* 45 S.W.3d 312, 315–19 (Tex. App.-Corpus Christi 2001, pet. ref'd) (reversing trial court's suppression ruling because State failed to prove voluntariness of consent to search by clear and convincing evidence). Because the trial court's decision is sustainable on either of these grounds, we overrule the State's sixth point.

### V. THE STATE'S POINTS 1 TO 4

The State's first four points contend that the trial court erred by granting Hunter's motion to suppress because: (1) the ruling violates the United States Supreme Court's holding in *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); (2) Officer Keller acted reasonably; and (3) the ruling was based on the erroneous conclusion that Hunter's continued detention exceeded the scope of the stop when, in fact, (4) Hunter's detention had ended by the time Officer Keller asked for permission to search. The arguments in points one through four do not constitute exceptions to the general prohibition against warrantless *searches.* See *Morgan,* 906 S.W.2d at 629. Instead, they focus on Officer Keller's *detention,* or lack of detention, of Hunter. Because the State proceeded at the suppression hearing under the consent exception, not on the ground that the search was conducted incident to any continued investigative detention based on reasonable articulable facts,[5] we need not address these points.

We will affirm the trial court's suppression ruling if it is supported by the record and correct on any theory of law applicable to the case. *Villarreal v. State,* 935

---

**5.** In fact, Officer Keller specifically denied possessing reasonable articulable facts justifying a continued detention:

Q. Did you smell marijuana when you were standing up there [by the driver's side window]?
A. No.

Q. Did you smell alcohol on this [sic] breath?
A. No.
Q. Did he pull a gun on you?
A. No.
Q. Did you feel unsafe—fear for your safety or anything like that at that point?

S.W.2d 134, 138 (Tex.Crim.App.1996). We have held that the record before us supports the trial court's suppression ruling either on the ground that Hunter's consent was not voluntary or on the ground that the State failed to prove by clear and convincing evidence that Hunter's consent was voluntary. Any dispute over any continued detention of Hunter is mooted by our holding that the record supports the trial courts suppression ruling on the consent issue. Accordingly, we decline to address the State's points one through four.

## VI. CONCLUSION

Having overruled the State's sixth point, having determined that the State's fifth point presents no basis for reversal of the trial court's suppression ruling, and having determined that the State's first through fourth points are moot in light of our disposition of the State's sixth point, we affirm the trial court's order granting Hunter's suppression motion.

....

Q. So, when we assume, like the prosecutor said something like him hiding stuff, let's hide something real quick, you didn't see anything like that, did you?

