COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-153-CR
  
  
MARY 
ELIZABETH HARRISON                                                 APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        Appellant 
Mary Elizabeth Harrison appeals her conviction for driving while 
intoxicated.  After the trial court denied her motion to suppress, Harrison 
pleaded guilty pursuant to a plea agreement with the State.  In accordance 
with the agreement, the trial court sentenced her to 180 days in jail, probated 
for two years, and imposed a $550 fine.  The primary issues we address in 
this appeal are whether police possessed reasonable articulable suspicion to 
stop Harrison and whether the trial court erred by concluding that Harrison’s 
consent to provide a urine specimen was voluntarily given.[1]  
Because a concerned citizen called 911 to report Harrison’s erratic driving, 
followed Harrison, and reported Harrison’s location to police, we hold that 
police possessed reasonable articulable suspicion justifying Harrison’s 
stop.  But because all of the witnesses at the suppression hearing that 
testified on the consent issue—two police officers and Harrison 
herself—agreed that Harrison consented to provide a urine specimen only after 
enduring five or six painful needle sticks during unsuccessful attempts to 
submit a blood specimen and only to avoid further needle sticks, we hold that 
the voluntariness of her consent was not established by clear and convincing 
evidence.  Accordingly, we reverse the trial court’s suppression ruling 
and remand this case to the trial court.
II. Factual and 
Procedural Background
        On 
August 8, 2002, at around 3:00 p.m., a police officer for the City of Arlington 
stopped Harrison’s vehicle after Vickie Evans, a private citizen, called 911 
to report Harrison’s erratic driving.[2]  
Another Arlington police officer, Officer Charles Lodatto, arrived on the scene 
shortly after Harrison had been detained and spoke to Evans concerning 
Harrison’s driving.  According to Officer Lodatto, Evans telephoned 911 
to report Harrison’s erratic driving because she suspected that Harrison was 
either having a seizure or was intoxicated.  Evans told Officer Lodatto 
that, as she followed Harrison’s vehicle, she noticed that the vehicle was 
going from lane to lane and that Harrison “was flopping around like a fish” 
inside the vehicle.
        After 
Officer Lodatto finished gathering information from Evans, he began interviewing 
Harrison.  As he spoke with her, he noticed that Harrison “could not sit 
still” and that “[s]he was continuously fidgeting, moving around, bending 
around at the waist, [and] lifting up her legs.”  As a result, Officer 
Lodatto conducted several field sobriety tests to determine if Harrison was 
under the influence of drugs or alcohol.  Although Harrison initially 
passed the HGN test, she failed both the walk-and-turn test and the 
one-leg-stand test, and she demonstrated a lack of convergence in her 
eyes.  Based upon his observations of Harrison’s behavior and her 
performance during the field sobriety tests, Officer Lodatto believed that 
Harrison was under the influence of an intoxicant other than alcohol.  
Officer Lodatto arrested Harrison for driving while intoxicated.
        At 
the Arlington City Jail, Officer Lodatto asked Harrison to submit breath and 
blood specimens and read Harrison the required statutory warnings advising her 
of the consequences of refusing to submit such specimens.  See Tex. Transp. Code Ann. § 724.015 
(Vernon Supp. 2004).  Harrison consented to provide both breath and blood 
specimens.  Harrison first submitted a breath specimen, and the result of 
the breath test was negative for alcohol.  Then Officer Lodatto and Officer 
Donna DeMott, another Arlington police officer, transported Harrison to 
Arlington Memorial Hospital so that medical personnel could obtain a blood 
specimen.  At the hospital, a nurse made numerous unsuccessful attempts to 
draw a testable quantity of blood from Harrison’s hand and the inside of her 
elbow.  When the nurse began examining Harrison’s feet as a possible site 
to draw blood, Officer DeMott asked Harrison if she would consent to providing a 
urine sample instead of continuing with efforts to obtain a blood 
specimen.  Harrison agreed, and her urine specimen yielded positive results 
for controlled substances.
        Harrison’s 
pretrial motion to suppress and a memorandum filed in support of her motion 
alleged that the police lacked reasonable suspicion to detain her and that her 
consent with respect to the urine specimen was involuntary.  On March 21, 
2003, the trial court held a hearing on Harrison’s motion to suppress and 
denied the motion.  On April 21, 2003, Harrison entered a negotiated plea 
of guilty, and the trial court sentenced her to 180 days in jail, probated for 
two years, and imposed a $550 fine.  This appeal followed.
III. Standard 
of Review
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997).  In reviewing the trial court's decision, we do not 
engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 
543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial 
judge is the sole trier of fact and judge of the credibility of the witnesses 
and the weight to be given their testimony.  State v. Ross, 32 
S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total 
deference to the trial court's rulings on (1) questions of historical fact and 
(2) application-of-law-to-fact questions that turn on an evaluation of 
credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However, we 
review de novo a trial court’s rulings on mixed questions of law and fact if 
they do not turn on the credibility and demeanor of witnesses.  Johnson, 
68 S.W.3d at 652-53.
IV. Stop Based 
on Reasonable Articulable Suspicion
        In 
her second issue, Harrison argues that the trial court erred by denying her 
motion to suppress because police lacked reasonable articulable suspicion to 
stop her vehicle.  Law enforcement officers may stop and briefly detain 
persons suspected of criminal activity on less information than is 
constitutionally required for probable cause to arrest.  Terry v. Ohio, 
392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Pipkin v. State, 114 S.W.3d 
649, 653 (Tex. App.—Fort Worth 2003, no pet.).  The same standards apply 
whether the person detained is a pedestrian or is the occupant of an 
automobile.  Pipkin, 114 S.W.3d at 653.  To initiate an 
investigative stop, the investigating officer must possess a reasonable 
suspicion based on specific articulable facts that, in light of the officer's 
experience and general knowledge, would lead the officer to the reasonable 
conclusion that criminal activity is underway and the detained person is 
connected to the activity.  Garcia v. State, 43 S.W.3d 527, 530 
(Tex. Crim. App. 2001).  These facts must amount to more than a mere hunch 
or suspicion.  Pipkin, 114 S.W.3d at 654.
        The 
information provoking the officer's suspicions need not be based on his own 
personal observations, but may be based on an informant's tip that bears 
sufficient “indicia of reliability” to justify a stop.  See Adams v. 
Williams, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 1923-24 (1972).  
Unsolicited information concerning a crime in progress provided to police in a 
face-to-face encounter by a concerned citizen who is not connected with police 
and is not a paid informant is inherently reliable.  United States v. 
Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir. 1978), cert. denied, 
439 U.S. 936 (1978); State v. Fudge, 42 S.W.3d 226, 232 (Tex. 
App.—Austin 2001, no pet.); State v. Sailo, 910 S.W.2d 184, 189 (Tex. 
App.—Fort Worth 1995, pet. ref'd); see also United States v. Unger, 469 
F.2d 1283, 1287 n.4 (7th Cir. 1972), cert. denied, 411 U.S. 920 
(1973).  This is because in such situations the citizen puts himself in a 
position of being identified and being held accountable for his 
intervention.  Sierra-Hernandez, 581 F.2d at 763; Fudge, 42 
S.W.3d at 232; Sailo, 910 S.W.2d at 188.  In fact, numerous Texas 
courts of appeals have upheld investigative stops based on unsolicited reports 
from concerned citizens.  See, e.g., Pipkin, 114 S.W.3d at 653-54 
(upholding stop based on unsolicited personal report to police by motorist who 
called police on his cell phone as he was driving near defendant and observed 
defendant driving erratically and smoking crack pipe); Fudge, 42 S.W.3d 
at 228, 232 (upholding stop based on cab driver's unsolicited personal report to 
officer about erratic driving); State v. Garcia, 25 S.W.3d 908, 911 (Tex. 
App.—Houston [14th Dist.] 2000, no pet.) (upholding stop based on 
individual’s unsolicited personal report of incident to police officer in 
parking lot, although individual left scene without giving name to police); State 
v. Stolte, 991 S.W.2d 336, 342-43 (Tex. App.—Fort Worth 1999, no pet.) 
(upholding stop based on unsolicited tip from informant who witnessed erratic 
driving, called police on cellular phone, followed vehicle, and waited at scene 
when stop was made).
        The 
present facts—the 911 call by Vickie Evans to report Harrison’s erratic 
driving and “flopping around like a fish” inside the car—cause this case 
to fall squarely within the above-discussed line of cases.  Evans was not 
connected with police and provided unsolicited information concerning a 
potential crime in progress, DWI, as she was personally observing the 
event.  Thus, the information provided by Evans was sufficiently reliable 
to provide police with reasonable articulable suspicion to initiate an 
investigative stop of Harrison.  See, e.g., Pipkin, 114 S.W.3d at 
653-54; Fudge, 42 S.W.3d at 232; Garcia, 25 S.W.3d at 911; Stolte, 
991 S.W.2d at 342-43; Sailo, 910 S.W.2d at 189.  We overrule 
Harrison’s second issue.
V. Consent To 
Provide Urine Specimen Not Voluntary
        In 
her first issue, Harrison contends that the trial court erred by finding that 
she voluntarily consented to provide a urine specimen.  The State, however, 
maintains that it proved by clear and convincing evidence that Harrison’s 
consent was voluntary.
        Under 
the Fourth and Fourteenth Amendments, a search conducted without a warrant is 
per se unreasonable, subject only to a few established and well-delineated 
exceptions.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 
2041, 2043 (1973).  A search conducted with the consent of the suspect is 
one such exception, so long as the consent is voluntary.  Id. at 
219, 93 S. Ct. at 2043-44.  To show that the search was made with consent, 
the State must prove by clear and convincing evidence, based on the totality of 
the circumstances, that the defendant gave consent freely and voluntarily.[3]  Reasor v. State, 12 S.W.3d 813, 818 (Tex. 
Crim. App. 2000); Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App. 
1985); State v. Hunter, 102 S.W.3d 306, 310 (Tex. App.—Fort Worth 2003, 
no pet.).  Voluntariness is to be determined from all the circumstances 
surrounding the consent.  Schneckloth, 412 U.S. at 248-49, 93 S. Ct. 
at 2059.
        In 
order to be voluntary, consent must “not be coerced, by explicit or implicit 
means, by implied threat or covert force.”  Carmouche, 10 S.W.3d 
at 331 (quoting Schneckloth, 412 U.S. at 228, 93 S. Ct. at 2048).  
To be considered voluntary, a suspect’s consent must not be the result of 
physical or psychological pressures from law enforcement.  Erdman v. 
State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993).  Thus, if consent is 
obtained through duress or coercion, whether actual or implied, that consent is 
not voluntary.  Schneckloth, 412 U.S. at 248-49, 93 S. Ct. at 2059; Allridge 
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), cert. denied, 
510 U.S. 831 (1993); Hunter, 102 S.W.3d at 310.  For example, if a 
person’s consent is induced by an officer’s misstatement of the consequences 
flowing from a refusal to submit to a test, the consent may be considered 
involuntary.  See Erdman, 861 S.W.2d at 893-94.
        Testimony 
by law enforcement officers that no coercion was involved in obtaining the 
consent is evidence of the consent’s voluntary nature.  Martinez v. 
State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d 
at 311.  A police officer’s failure to inform the accused that he can 
refuse consent is also a factor to consider in determining the voluntariness of 
consent; however, the absence of such information does not automatically render 
the accused’s consent involuntary.  Johnson, 68 S.W.3d at 653; Hunter, 
102 S.W.3d at 311.  Nor is consent rendered involuntary merely because the 
accused is under arrest.  Johnson, 68 S.W.3d at 653; Hunter, 
102 S.W.3d at 311.  By the same token, consent is not established by 
showing no more than acquiescence to a claim of lawful authority.  Carmouche, 
10 S.W.3d at 331; Hunter, 102 S.W.3d at 311.
        Four 
witnesses testified at the suppression hearing.  Only Harrison, Officer 
Lodatto, and Officer DeMott testified regarding Harrison’s consent to provide 
a urine specimen; Officer Rogelio Trevino, Jr. testified regarding Harrison’s 
consent to provide a breath specimen and her breath test results.  Both 
officer DeMott and Lodatto testified that Harrison was under arrest for driving 
while intoxicated when she consented to provide a urine specimen.  They 
agreed that a nurse stuck Harrison’s hands and arms five or six times with a 
needle and was able to withdraw some blood, but not a testable quantity.
        Officer 
DeMott testified that Harrison “appear[ed] to be in quite a bit of pain” 
from the repeated attempts to find a vein to complete the blood draw.  When 
the nurse began examining Harrison’s feet as a possible site to draw blood, 
Officer DeMott testified that she asked Harrison if she would “be willing to 
provide a urine sample instead of continuing with giving a blood 
sample.”  Officer DeMott testified that “in lieu of continuing to get 
poked, [Harrrsion] said, I’ll give you a urine sample.”[4]
        Officer 
Lodatto testified that Harrison complained about being stuck so many times 
because it was painful.  Officer Lodatto likewise explained, “The nurses 
could not find a -- basically a vein or any way of really pulling blood from her 
and so she consented to a urine [sample].”  He said that “Officer 
DeMott asked for the consent of the urine . . . based on them not being able to 
get the blood.”
        Harrison 
said that her veins kept collapsing, making huge bruises each time she was stuck 
with the needle.  She further testified that she “begged them to stop” 
sticking her.  According to Harrison, she agreed to provide the urine 
sample because she wanted to avoid the pain of being stuck any more times with 
the needle.
        During 
this time, neither Officer DeMott nor Officer Lodatto informed Harrison that she 
could refuse to provide the urine sample or that she would not lose her 
driver’s license if she did not provide the urine sample.  According to 
Officer Lodatto, he did not give Harrison the statutory warnings prior to her 
consent to the urine specimen.  Nonetheless, he testified that after 
Harrison had consented to provide the urine specimen, he added “urine” to 
the form entitled “Statutory Warnings” to indicate that Harrison consented 
to provide a urine specimen, as well as a blood and a breath specimen.
        Harrison 
denied that she freely and voluntarily consented to provide the urine 
specimen.  She testified that her license was very important to her and 
that she consented to provide the breath and blood specimens specifically 
because she did not want to lose her license.  She further testified that 
she was not informed that the consequences with respect to refusal of breath and 
blood specimens did not apply with respect to the urine specimen.  
According to Harrison, she would have refused to provide a urine specimen had 
she known that she would not have had her driver’s license suspended.  
Harrison testified that she believed taking the urine test “was the same as 
taking a -- a blood test.”
        Reviewing 
the totality of the circumstances surrounding Harrison’s consent, we hold that 
the State did not meet its burden to prove by clear and convincing evidence that 
Harrison’s consent was voluntary.  Officer DeMott requested Harrison’s 
consent to provide the urine specimen while she was in custody and while she was 
undergoing repeated painful needle sticks.  The witnesses in the hospital 
room—Harrison and Officers DeMott and Lodatto—all testified that Harrison 
was in pain and agreed to provide the urine specimen so that she would not be 
stuck with the needle again.  The fact that Harrison’s consent was given 
to avoid painful physical pressures—more needle sticks, probably in her 
feet—weighs against its voluntariness.  See Erdman, 861 S.W.2d at 
893; accord Rayford v. State, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003) 
(recognizing consent was voluntary despite claims that defendant’s medical 
condition rendered it involuntary where no evidence existed that defendant was 
suffering pain).  In addition, while neither officer verbally misstated the 
consequences flowing from Harrison’s refusal to provide a urine specimen, both 
officers testified that they did not inform Harrison that she could refuse to 
consent to provide a urine specimen or that the consequences of refusing a 
breath or blood specimen were inapplicable to their request for a urine 
specimen.  See Tex. Transp. 
Code Ann. § 724.011(a) (Vernon 1999), § 724.015(2); Johnson, 68 
S.W.3d at 653; see also Erdman, 861 S.W.2d at 893-94 (recognizing 
importance of ensuring that consent is given with a correct understanding of the 
actual statutory consequences of refusal).  Because all three witnesses at 
the suppression hearing agreed that Harrison was in pain and agreed to provide 
the urine specimen to avoid further needle sticks, agreed Harrison was not 
advised of her right to decline to provide a urine specimen, and agreed Harrison 
was not informed her license would not be suspended if she refused, we cannot 
hold that the State met its heightened burden to prove voluntariness of 
Harrison’s consent under the totality of the circumstances by clear and 
convincing evidence.[5]  Consequently, we 
hold that the trial court abused its discretion by concluding that Harrison 
freely and voluntarily consented to provide the urine specimen.  
Accordingly, we sustain her first issue.
VI. Conclusion
        Having 
sustained Harrison’s first issue on appeal, we reverse the trial court’s 
judgment and remand the case for a new trial.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
July 1, 2004


NOTES
1.  
In its brief, the State points out that the record contains two conflicting 
certifications of Harrison’s right to appeal and argues that Harrison has 
waived her right to appeal in this case.  In light of the conflicting 
certifications by the trial court concerning Harrison’s right to appeal, we 
abated this case and requested that the trial court conduct a hearing to 
determine whether Harrison had the right to appeal her pretrial motion to 
suppress.  Following the hearing, in a supplemental clerk’s record, the 
trial court certified Harrison’s right to appeal the denial of her pretrial 
motion in the instant case.
2.  
Neither Evans nor the police officer who initiated the traffic stop testified at 
the suppression hearing.
3.  
Although the United States Constitution requires the State to prove the 
voluntariness of consent only by a preponderance of the evidence, the Texas 
Constitution requires the State to show by clear and convincing evidence that 
the consent was freely given.  Carmouche, 10 S.W.3d at 331 (citing State 
v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997)).  In light of 
these cases, we decline to adopt the State’s contention that pursuant to Hulit 
v. State, 982 S.W.2d 431 (Tex. Crim. App. 1998), the State has no burden to 
prove consent or the voluntariness of consent, but must prove only 
reasonableness of police conduct.
4.  
Specifically, Officer DeMott testified as follows on direct examination:

Q. 
Tell the Court the efforts made to obtain a blood test from the Defendant.
A. 
The nurse attempted, I would say, approximately five to six times to obtain a 
blood sample.  Ms. Harrison was very cooperative the whole time, tried to 
work with the nurse to - - to assist her in getting the sample.  She would 
instruct the nurse on how best to try to take it.  Ms. Harrison did also 
appear to be in quiet a bit of pain from the nurse attempting to obtain the 
sample.
Q. 
At some point were the efforts to obtain a blood test stopped?
A. 
Yes. When it appeared it was causing Ms. Harrison a lot of pain, I mentioned to 
her would she be willing to provide a urine sample instead of continuing with 
giving a blood sample.
Q. 
And what was her response to your offer to give a urine sample?
A. 
She continued being very cooperative and agreed readily to provide one.
Q. 
So in lieu of continuing to get poked, she said, I’ll give you a urine sample?
A. 
Yes.
 
5.  
Although the visiting judge denied Harrison’s motion to suppress, he 
recognized that the “introduction of the urine test . . . [was] a little 
closer question for the Court.”