Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JOHN McKINSTRY,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00450-CR

Appeal from the

34th District Court

of El Paso County, Texas

(TC# 20020D04899)




O P I N I O N

           This is an appeal from a conviction for the offense of possession of marijuana in an
amount of fifty pounds or less but more than five pounds. Appellant pleaded guilty and the
court assessed punishment at two and one-half years in the Institutional Division of the Texas
Department of Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           The testimony at the hearing on Appellant’s motion to suppress the evidence revealed
that law enforcement officers conducted a warrantless search of Appellant’s dwelling at 670
El Parque in El Paso, Texas on January 10, 2002.
           Raul Apodaca, a detective with the El Paso County Sheriff’s Department, testified that
he and his partner, Detective Guzman, were following a vehicle that they believed was
carrying narcotics. The car went into the garage at Appellant’s home. The car left shortly
thereafter. At about 3 to 4 p.m., they knocked on Appellant’s front door and Appellant spoke
to them through a wrought-iron security door. Five members of the El Paso County Metro
Narcotics Task Force were present at Appellant’s house. The detectives asked Appellant to
step outside, but Appellant declined. They stated they were conducting a narcotics
investigation, and they believed there were narcotics inside the house. Appellant stated that
he needed to consult with his attorney before he let them inside the house.
           Appellant was unable to contact his attorney and after about twenty minutes, he
stepped outside with the detectives. It was cold and the jacketless Appellant was shivering. 
When asked for permission to search the house for narcotics, Appellant said he was still not
comfortable with allowing them to search and he went back in the house to call his attorney. 
Appellant went in and out of his house three or four times until Detective Apodaca decided
to get a search warrant. Apodaca stated that Appellant was free to leave anytime he desired. 
Both detectives drove off to obtain a search warrant. Other detectives stayed outside
Appellant’s home. However, after ten minutes the detectives received a call indicating that
Appellant had agreed to allow a search of his house. Appellant was given a consent-to-search form. Apodaca told Appellant to sign it if he agreed with everything that was stated
on the form. Appellant signed the form while he was standing on his front porch. His
signature was witnessed by his houseguest, Natale Bruno, and another detective. After he
signed the form, Appellant allowed the detectives inside the house. Upon the alert of a K-9
dog, thirty-one pounds of marijuana was found inside the house. Apodaca testified that no
one ever handcuffed or drew a gun on Appellant and he was never placed in a patrol car prior
to or during the search.
           Detective Jesus Rivera testified that he and twelve other officers were present at
Appellant’s house. Appellant was inside his house and spoke to detectives through a
wrought-iron door. One of the detectives told Appellant to come outside. Appellant came
in and out of the house and he was joined by the houseguest, Bruno, on one occasion. When
Apodaca and Guzman left to get the search warrant, Rivera testified that Appellant would
not have been allowed to drive away from his house because the law officers had probable
cause that there were narcotics in the house.
           Rivera related that he heard another detective tell Appellant that they would be
authorized to break the door in when the other two detectives returned with a search warrant. 
He could not recall if Appellant was inside or outside the house when Appellant signed the
consent-to-search form.
           Appellant testified that when the detectives arrived at his house, he was ordered
outside. He went onto his front porch and was told that they had stopped a vehicle which had
marijuana inside and the vehicle had come from Appellant’s house. Appellant denied
knowledge of the car and he went inside to call his attorney. The detectives banged on the
door and told him to come back outside. He felt he was not free to leave the house, and he
told the detectives to obtain a search warrant. He was told that if he made the detectives
obtain a search warrant, both Appellant and his houseguest would have to go to jail. He was
told that upon execution of the search warrant, his house would be torn apart.
           As Appellant was cold, he invited the detectives inside the house although he did not
give them permission to search. The officers began searching the house. They found
marijuana in the garage. They then forced him to sign a consent to search. He felt that he
had to sign the consent because otherwise they would arrest his houseguest.
           Natale Bruno stated that he was an old friend of Appellant. He arrived at Appellant’s
house shortly before the detectives arrived. He heard a knock on the door. He looked out
the window and saw numerous law enforcement officials. When Appellant answered the
door, he was asked to step outside. Appellant refused and the officers became adamant that
he come outside. Bruno was told that he needed to come outside as well. The officers told
Appellant that if he let them inside the house, they would not arrest Bruno. Bruno stated that
Appellant was eventually badgered to let them inside and they searched the house. They had
Appellant sign the consent-to-search form well after they found the marijuana.
II. DISCUSSION
           In reviewing a trial court’s ruling on a motion to suppress, we afford almost total
deference to the trial court’s determination of the historical facts that the record supports,
especially when the trial court’s findings turn on evaluating a witness’s credibility and
demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); Guzman v. State, 955
S.W.2d 85, 89 (Tex.Crim.App. 1997). We afford the same amount of deference to the trial
court’s ruling on “application of law to fact questions,” also known as “mixed questions of
law and fact,” if resolving those ultimate questions turns on evaluating credibility and
demeanor. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. The voluntariness of a
consent-to-search issue is a mixed question of law and fact. State v. Hunter, 102 S.W.3d
306, 309 (Tex.App.--Fort Worth 2003, no pet.). However, we review de novo questions of
law and “mixed questions of law and fact” that do not turn on an evaluation of credibility and
demeanor. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. A question “turns” on an
evaluation of credibility and demeanor when the testimony of one or more witnesses, if
believed, is always enough to add up to what is needed to decide the substantive issue. 
Loserth v. State, 963 S.W.2d 770, 773 (Tex.Crim.App. 1998). As the credibility question
between the testimony of Detective Apodaca and Appellant’s testimony is determinative, we
will utilize the aforementioned “almost total deference” standard.
           The Fourth Amendment to the United States Constitution protects the “right of the
people to be secure in their persons, houses, papers, and effects, against unreasonable
searches and seizures.” U.S. Const. amend. IV. The Supreme Court has held that the
Fourth Amendment generally imposes a warrant requirement for searches. Katz v. United
States, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967); see Johnson v. United States, 333 U.S.
10, 13-14, 68 S.Ct. 367, 369 (1948). “[A] ‘search’ occurs when the government violates a
subjective expectation of privacy that society considers objectively reasonable.” Dawson v.
State, 106 S.W.3d 388, 391 (Tex.App.--Houston [1st Dist.] 2003, no pet.), citing Kyllo v.
United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042-43 (2001). It has been established that
warrantless searches are “per se unreasonable under the Fourth Amendment--subject only to
a few specifically established and well-delineated exceptions.” Katz, 389 U.S. at 357, 88
S.Ct. at 514.
           One of the established exceptions to both the requirements of a warrant and probable
cause is a search conducted pursuant to consent. Corea v. State, 52 S.W.3d 311, 315-16
(Tex.App.--Houston [1st Dist.] 2001, pet. ref’d), citing Schneckloth v. Bustamonte, 412 U.S.
218, 219, 93 S.Ct. 2041, 2043- 44 (1973). The State can establish the lawfulness of an illegal
search through bearing the burden of proving, by clear and convincing evidence, that consent
was freely and voluntarily given. Id. at 316, citing Bumper v. North Carolina, 391 U.S. 543,
548, 88 S.Ct. 1788, 1791 (1968). Hence, the State must show that the consent was positive
and unequivocal and not merely an acquiescence to a claim of lawful authority. Id. There
must be no evidence of coercion. Id.
           Thus, an individual may waive his rights under the Fourth Amendment by consenting
to a search. Id. Whether consent was voluntary is a question of fact and must be analyzed
under the totality of the circumstances. Id., citing Schneckloth, 412 U.S. at 227, 93 S.Ct. at
2047-48 and Paulus v. State, 633 S.W.2d 827, 850 (Tex.Crim.App. 1981).
           In the instant case, Appellant contends that his consent to search was the result of an
illegal detention which escalated into an unlawful warrantless arrest. However, given the
testimony of Detective Apodaca, the trial court was free to believe that Appellant was free
to leave the house.
           With regard to the question of the voluntariness of the consent to search, a review of
the evidence indicates that Appellant was not coerced by the officers exhibiting drawn guns
or other forms of intimidation. Appellant was free to leave the premises and he made
repeated attempts to contact his attorney. The fact that there were a number of officers about
the house is not determinative of the issue of the voluntariness of the consent. See Neumuller
v. State, 953 S.W.2d 502, 515 (Tex.App.--El Paso 1997, pet. ref’d). We find that the trial
court did not abuse its discretion in overruling Appellant’s motion to suppress the evidence. 
Issue No. One is overruled.
           Having overruled Appellant’s sole issue on review, we affirm the judgment of the trial
court.
                                                                  RICHARD BARAJAS, Chief Justice
July 21, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)