In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00118-CR
______________________________


STOW KINGDON HART, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19727


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Stow Kingdon Hart appeals from his conviction by a jury for aggravated sexual
assault. The jury assessed his punishment at ninety-nine years' imprisonment. Before
trial, the court held a hearing before a separate jury to determine whether Hart was
competent to stand trial. The jury found him competent. Counsel raises a number of
issues on appeal directed at both the competency hearing and the trial on the merits.
The Hearing on Competency
          We first review the issues related to the competency determination. Hart contends
the court erred by denying his motion for continuance because of the State's delay in
turning over copies of examination videotapes made by a nontestifying State's expert, Mary
Conroy, and relied on by a testifying State's expert, David Bell, until five o'clock on the
evening before jury selection was to begin for the competency hearing, and because
Conroy's report was not provided until after the trial. Hart argues that, because of these
failures, his counsel was unable to adequately prepare for the competency hearing.
          This case involved a number of continuances obtained by Hart. There were several
hearings at which the parties discussed the various experts who had been contacted, and
whether the issue would be competency or sanity, and when information would be provided
about the results of the experts' tests. The evidence ultimately shows that the four
videotapes, containing six and one half hours of interview time by Conroy, were delivered
to counsel on Monday afternoon, but one was blank.


 When informed of this, the State
made a replacement copy and delivered it to counsel on Tuesday at 5:00 p.m., the
afternoon before the hearing was set to begin. After an extensive discussion of the length
of time that Hart had been incarcerated awaiting trial, and the various other trial settings
and a scheduled vacation of one of the attorneys, the court denied Hart's motion for a fifth
continuance.
          Hart contends the court erred by denying his motion for continuance. A trial court's
ruling on a motion for continuance is reviewed for abuse of discretion. Heiselbetz v. State,
906 S.W.2d 500, 511 (Tex. Crim. App. 1995); see Tex. Code Crim. Proc. Ann. arts. 29.03,
29.06(6) (Vernon 1989). To establish an abuse of discretion, there must be a showing the
defendant was actually prejudiced by the denial of the motion. Janecka v. State, 937
S.W.2d 456, 468 (Tex. Crim. App. 1996); Heiselbetz, 906 S.W.2d at 511. 
          Hart had not made bail and had been incarcerated between the date of his arrest
July 23, 2003, and the competency trial May 26, 2004. Hart had originally argued to the
trial court he believed Conroy's report might contain information favorable to the defense
and thus he needed it to adequately cross-examine Bell about his conclusions. Conroy's
report was not provided until after the hearing. Bell testified he had relied on the
videotapes, not on Conroy's report. Conroy was retained to address the issue of Hart's
sanity, not his competency to stand trial. Counsel argues that, in the absence of an earlier
delivery of the videotapes and a timely delivery of Conroy's report, the defense was unable
to effectively prepare for trial. Counsel did, however, two days before the hearing, have
most of the interview that resulted in the report and had the remainder the afternoon before
the hearing. In addition, although counsel generally argues prejudice, he makes no
concrete suggestion of how the lateness of the delivery actually influenced his presentation
or cross-examination at the hearing, or any actual prejudice that might have resulted. Our
review shows that counsel did, in fact, ably question the expert about his observations of
Hart and his alleged second personality, and discussed the concepts and theories
connected with the existence of multiple personalities in a careful and understandable
manner.
          The trial court had reasons to deny the additional continuance, and even if some
error had existed in its so doing, there is no indication of harm from this record. The
contention is overruled.
          Hart next contends the court erred during the competency hearing by refusing to
allow him to voir dire the jury panel and to later submit a charge to the jury on the factors
considered by an expert in determining competency. Counsel is evidently referring to the
trial court's refusal to either allow him additional time to inform the jurors about
Disassociative Identity Disorder or to question them further about the disorder. Thirty
minutes per side was allotted for voir dire. The trial court did not rule that the area of
questioning was improper; instead, the court pointed out that counsel had sufficient time
to ask such questions, counsel had chosen not to, and counsel had wasted portions of his
voir dire time, and the court then denied the request for additional time. No specific
questions were propounded by counsel.
          A trial court may impose reasonable restrictions on the exercise of voir dire
examination, including reasonable limits on the amount of time each party can question the
jury panel. Caldwell v. State, 818 S.W.2d 790, 793 (Tex. Crim. App. 1991), overruled on
other grounds, Castillo v. State, 913 S.W.2d 529 (Tex. Crim. App. 1995). A reasonable
time limitation for one case may not be reasonable for another, and each case must be
examined on its own facts. Ratliff v. State, 690 S.W.2d 597, 600 (Tex. Crim. App. 1985);
Ganther v. State, 848 S.W.2d 881, 882 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). 
The amount of time allotted is not, standing alone, conclusive. Ratliff, 690 S.W.2d at 600;
Ganther, 848 S.W.2d at 882. However, a trial court may not restrict proper questions that
seek to discover a juror's views on issues relevant to the case. McCarter v. State, 837
S.W.2d 117, 121–22 (Tex. Crim. App. 1992). Absent an abuse of discretion, we will not
reverse the trial court's refusal to allow defense counsel additional time on voir dire. See
id.; Caldwell, 818 S.W.2d at 793; Dhillon v. State, 138 S.W.3d 583, 587 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).
          When a party complains of an inability to collectively question the venire, a two-part
test applies: (1) whether the complaining party attempted to prolong the voir dire;


 and
(2) whether the questions the party was not permitted to ask were proper voir dire
questions. See McCarter, 837 S.W.2d at 121; Dhillon, 138 S.W.3d at 587–88.


 
          In this case, it does not appear that counsel attempted to prolong the voir dire. 
However, there are no specific questions propounded, and in the absence of such, it is
impossible to determine whether the questions that might have been propounded were
proper or improper. The question, as stated by counsel, presents only a general topic for
discussion, indicating counsel merely wanted to question the panelists about whether the
disorder was an illness they could consider and to let them know the nature of that disease. 
The question was not narrowly tailored in scope. See Barajas v. State, 93 S.W.3d 36,
40–41 (Tex. Crim. App. 2002); Smith v. State, 703 S.W.2d 641, 645 (Tex. Crim. App.
1985); Dhillon, 138 S.W.3d at 589. Error has not been preserved for review. 
          Under this contention, Hart also complains of the trial court's failure to grant his
request to charge the jury with the elements the statute directs experts to consider in their
examinations of defendants for competency. Tex. Code Crim. Proc. Ann. art. 46B.024
(Vernon Supp. 2004–2005). The jury was charged as set out in Tex. Code Crim. Proc.
Ann. art. 46B.003 (Vernon Supp. 2004–2005), which provides the definition of
incompetency. 
          Defense counsel's requested instruction contains factors set out by the statute as
being necessary for the expert to consider in making his or her determination. Those
factors were subject to questioning of the experts at the hearing, but that does not
necessarily translate into factors that must be individually presented to the jury in the
charge. There is no authority requiring those factors to be separately sent to the jury, and
they are on their face factors directed at the expert for use in the expert's evaluation. Error
has not been shown.
          Hart also argues that the court erred by failing to disqualify the State's expert after
the State's attorney took actions aimed at ensuring that the expert examined Hart without
counsel present. As acknowledged by counsel, a defendant has no right to have counsel
present during questioning by an expert in a competency examination. Purtell v. State, 761
S.W.2d 360, 374 (Tex. Crim. App. 1988) (applying Sixth Amendment analysis and
concluding that, although defendant has right to be warned and counsel has right to be
informed of proposed examination, defendant has no right to have counsel present during
examination). Counsel argues that, despite the caselaw to the contrary, Hart should have
been allowed to bring an attorney with him because it would provide an opportunity for
defense counsel to observe the interviewer and to more effectively cross-examine such
expert at the competency hearing. We are unpersuaded, and in light of the holding of the
Texas Court of Criminal Appeals, we are bound to apply that law as articulated by that
court. The contention is overruled.
          Hart also contends the trial court erred by not granting a motion for new trial after
one of the prosecutors made faces at Hart during final argument at the competency
hearing, causing Hart to respond in kind in front of the jury. The argument is that the
prosecutor engaged in a type of prosecutorial misconduct. Claims of this nature are
examined on a case-by-case basis. The Texas Court of Criminal Appeals has suggested
some nonexclusive factors that are worthy of review in analyzing such a claim. First, the
defendant objected to the conduct of the prosecutor. Second, the prosecutor was, by his
or her actions, deliberately violating an express court order. Third, in reversing the cited
cases, the court relied on prosecutorial misconduct so blatant as to border on being
contumacious. Stahl v. State, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988); Landry v.
State, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985).
          There are several unique factors in this case. There was no objection, as explained
by appellate counsel, because at the time of the alleged misconduct he was in his own final
argument and was neither looking at opposing counsel nor his client, and only became
aware of the allegations after trial. Under these circumstances, we are reluctant to hold
that any claim has not been preserved, because it involves allegations of wrongdoing that
were allegedly specifically hidden from counsel's sight, and the lack of a contemporaneous
objection was therefore understandable. Counsel's raising of the contention in his motion
for new trial, supported by the affidavit of the defendant's wife, is sufficient to bring the
matter before us as a review of the trial court's denial of the motion. The granting or
denying of a motion for new trial lies within the discretion of the trial court. We do not
substitute our judgment for that of the trial court, but rather decide whether the trial court's
decision was arbitrary or unreasonable. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App.
1995); State v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). 
          In this case, the court conducted a hearing on the motion for new trial and was
confronted with evidence a prosecutor had made faces at the defendant; the prosecutor,
however, testified she had not done so. The court's denial of the claim was thus supported
by evidence the event did not occur. Faced with that situation, we cannot conclude that
the court's decision was arbitrary or unreasonable. The contention of error is overruled.
The Trial on the Merits
          Hart contends the court erred by refusing to allow him to introduce the testimony of
his expert witness, Joann Ondrovik, Ph.D., a psychologist, that in her opinion Hart was
acting under the influence of an alternate identity, the "blue man," at the time of the offense
and therefore could not have voluntarily or knowingly committed the offense. Hart argues
that, even though he withdrew his insanity defense before trial, he should have been able
to introduce evidence about the nature of his illness through his expert, argue that he
lacked the mens rea necessary for criminal responsibility and did not engage in a voluntary
act.


 
          Hart cites Mendenhall v. State, 77 S.W.3d 815, 816 (Tex. Crim. App. 2002), in
support of his position. In that case, Mendenhall was diabetic and assaulted a public
servant. He claimed the assault occurred during a time when he was "unconscious or
semi-conscious due to hypoglycemia" and as a result he "did not knowingly, intentionally,
or recklessly try to cause [the victim] harm," id., and requested a jury instruction on the
defense of insanity due to involuntary intoxication, which the trial court refused. In
upholding the trial court, the Texas Court of Criminal Appeals stated:
[T]he fact that two other defenses--the no-mental-state defense and the
no-voluntary-act defense--are readily available to persons who were
unconscious or semi-conscious at the time of the alleged offense suggests
that the Legislature did not intend for the insanity defense also to apply to
them. That is, persons who were unconscious or semi-conscious at the time
of the alleged offense may argue either that they lacked the mens rea
necessary for criminal liability, see Tex. Pen. Code § 6.02(a), or that they did
not engage in a voluntary act, see Tex. Pen. Code § 6.01(a).

Id. at 818.
          In the instant case, however, Hart at no time contended he was unconscious or
semi-conscious at the time of the commission of the offense, and the trial court rejected
Ondrovik's testimony as not being relevant. 
          We use an abuse of discretion standard when reviewing the trial court's decision on
the admission of evidence. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002);
Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not
reverse a trial court's ruling unless that ruling falls outside the zone of reasonable
disagreement. Torres, 71 S.W.3d at 760; Burden, 55 S.W.3d at 615. 
          Hart, having abandoned his plea of insanity, and making no contention he
committed the offense while unconscious or in a semi-conscious condition, we cannot say
the trial court's ruling was outside the zone of reasonable disagreement. We therefore
conclude that, under these facts, the trial court did not abuse its discretion by refusing to
admit testimony at the guilt/innocence stage of the trial about the alleged second
personality.
          Hart next contends the court erred by failing to grant his challenges for cause
against prospective jurors 10, 27, and 48—and then refusing to grant him additional
peremptory strikes. In our review, we look to see if the trial court abused its discretion in
denying an appellant's challenges for cause. Murphy v. State, 112 S.W.3d 592, 600 (Tex.
Crim. App. 2003). In reviewing a trial court's decision to grant or deny a challenge for
cause, we are to look at the entire record to determine if there is sufficient evidence to
support the court's ruling. Sells v. State, 121 S.W.3d 748, 759 (Tex. Crim. App. 2003). 
We give great deference in our review to the trial court's decision because the trial court
is present to observe the demeanor of the venireperson and to listen to such person's tone
of voice. Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); King v. State, 29
S.W.3d 556, 568 (Tex. Crim. App. 2000). We have been directed to give particular
deference when the potential juror's answers are vacillating, unclear, or contradictory. 
Feldman, 71 S.W.3d at 744; King, 29 S.W.3d at 568.
          Hart argues that his challenges for cause should have been sustained because juror
number 10 stated that, when she first saw Hart, she wondered what he had done and
assumed he was guilty because he was there, and was leaning toward voting guilty during
voir dire; because juror number 27 was a former sexual assault victim; and because juror
number 48 had heard about the case from a friend who was a Paris fireman (the victim is
the wife of a Paris fireman), and had already made up her mind that an offense had
occurred and that she could not disregard that belief.
          Each juror was questioned individually about the matters set out by Hart. In each
instance, each withdrew his or her equivocation and stated clearly that he or she could act
in a fair manner, based solely on the evidence at the trial, without any impact on
deliberations from any other source. Under this state of the evidence, we find the evidence
sufficient to support the trial court's ruling. The contention of error is overruled.
          Hart next contends the trial court erred by limiting Hart's voir dire examination of the
jury panel on the range of punishment for aggravated sexual assault or the lesser included
offense of sexual assault. Hart was accused of aggravated sexual assault with a deadly
weapon, with two enhancements. The range of punishment (as indicted) was five to
ninety-nine years' imprisonment with no enhancement, fifteen to ninety-nine years'
confinement with one enhancement, or twenty-five to ninety-nine years with two
enhancements. 
          The Texas Court of Criminal Appeals has stated repeatedly that both the state and
the accused have the right to inform the jury of the range of punishment applicable to an
offense, including a range that is enhanced, and to qualify the panel on the full range of
punishment. Martinez v. State, 588 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1979);
Bevill v. State, 573 S.W.2d 781, 783 (Tex. Crim. App. 1978). Under this formulation, the
state may inform the jury panel of the range of punishment applicable if the state was to
prove a prior conviction for enhancement purposes, but the state may not inform the jury
of any specific allegations contained in an enhancement paragraph of a particular
defendant's indictment. Frausto v. State, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel
Op.] 1982); Estes v. State, 873 S.W.2d 771, 773 (Tex. App.—Fort Worth 1994, pet. ref'd).
          In this case, Hart was not permitted to voir dire the jury on the range of punishment
that would have been proper had the State failed to prove its enhancements, or if the jury
had found Hart guilty of a lesser-included offense. Under the cases cited above, this is
error.


 
          Thus, we turn to the question of harm. Hart was convicted of the greater offense,
aggravated sexual assault, with a deadly weapon finding, and with both enhancements
found to be true, and was sentenced under the range of punishment for which the jury was
actually questioned. We disapprove of the trial court's refusal to allow counsel to qualify
the jury panel on the full range of punishment for the crime. However, because the
sentence was determined under the range about which the panel was actually qualified,
there was no harm in this instance. The contention of error is overruled.
          Hart next raises a procedural issue: that the court committed reversible error by
conducting the trial on the merits before all issues involving competency were finally
resolved. Specifically, Hart complains his motion for new trial on competency was not
ruled on until over a month after his trial on the underlying charge of aggravated sexual
assault. Hart's argument is based on Tex. Code Crim. Proc. Ann. art. 46B.004(d) (Vernon
Supp. 2004–2005), which provides, "If the court determines there is evidence to support
a finding of incompetency, the court . . . shall stay all other proceedings in the case." Hart
argues that, because the competency issue was not finally resolved, the trial was begun
prematurely, in violation of the statutory stay. 
          The statutes also provide that, if a jury determines a defendant is competent, the
court shall continue the trial with another jury selected for that purpose. Tex. Code Crim.
Proc. Ann. art. 46B.053 (Vernon Supp. 2004–2005). The statutes do not indicate that a
motion for a new competency trial is available, because the jury's determination of
competency to stand trial is not a final, appealable judgment. See Ortega v. State, 82
S.W.3d 748 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Lowe v. State, 999 S.W.2d
537, 537 (Tex. App.—Houston [14th Dist.] 1999, no pet.). 
          Rule 21.4 of the Rules of Appellate Procedure provides that a defendant may file
a motion for new trial before, but no later than thirty days after the date when the trial court
imposes or suspends sentence in open court. Tex. R. App. P. 21.4. No sentence is
imposed or suspended as the separate result of a competency hearing, but only as a result
of the prosecution of the criminal charge. Accordingly, a motion for new trial is not an
appropriate method to attack the ruling on competency and has no effect on this
proceeding. The contention of error is overruled.
          Hart next contends the court erred by overruling his motion for directed verdict. His
argument is based on evidence that the gun was a BB gun, not a pellet gun as specifically
alleged in the indictment. When the gun was introduced, the sponsoring officer read the
identification stamping that identified it as a Powerline Model Number 93, CO2 BB gun.
          Hart argues under variance law that, because the indictment specified the gun was
a pellet gun, which varied substantially from proof it was a BB gun, he was entitled to a
directed verdict.


 "A 'variance' occurs when there is a discrepancy between the allegations
in the charging instrument and the proof at trial." Gollihar v. State, 46 S.W.3d 243, 246
(Tex. Crim. App. 2001). Only a material variance requires reversal. See Fuller v. State,
73 S.W.3d 250, 253 (Tex. Crim. App. 2002). "The widely-accepted rule, regardless of
whether viewing variance as a sufficiency of the evidence problem or as a notice-related
problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is
immaterial." Gollihar, 46 S.W.3d at 247–48; see Rojas v. State, 986 S.W.2d 241, 246
(Tex. Crim. App. 1998). The defendant has the burden of demonstrating surprise or
prejudice. Santana v. State, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001). To determine
whether a defendant's "substantial rights" have been prejudiced, we must consider two
questions: whether the indictment, as written, informed the defendant of the charge
against her or him sufficiently to allow such defendant to prepare an adequate defense at
trial, and whether prosecution under the deficiently drafted indictment would subject the
defendant to the risk of being prosecuted later for the same crime. Gollihar, 46 S.W.3d at
248; Brown v. State, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).
          In Fuller, the Texas Court of Criminal Appeals held that a variance between an
indictment alleging the victim was "Olen M. Fuller" and the evidence at trial which referred
to the victim as "Mr. Fuller" or as "Buddy" was an immaterial variance. Fuller, 73 S.W.3d
at 254. Similar to Fuller, the variance in this case does not involve a statutory element of
the offense and there is no showing that Hart was surprised or prejudiced by the variance. 
The indictment, as written, sufficiently informed Hart of the charge against him and the
variance would not subject Hart to another prosecution for the same offense. The variance
is immaterial. The contention of error is overruled.
          Hart next raises several claims of error in connection with the admission of evidence
in connection with the BB gun. He contends the court erred by allowing the State to
designate and name an expert witness in midtrial to testify about the gun. A "standard"
discovery order was entered by the trial court that directed both parties to disclose their
expert witnesses no later than twenty days in advance of trial. Hart, in an abundance of
caution, filed a request for a hearing to determine the State's compliance with that order. 
A hearing was held, at which the delivery of evidence expected to be used at trial was
discussed. The court reiterated that, under the discovery order, evidence was to be turned
over no later than thirty days


 before trial, unless a good faith or reasonable cause
exception applied. 
          The complained-of testimony is that of police sergeant Chris Brooks. He testified
about a number of matters, including videotapes, an interview with the victim, his
examination of the location of the attack, and characteristics of the gun. At no point during
his testimony was he offered or qualified as an expert witness, nor did the court ever
recognize him as such. During one discussion out of the jury's presence, the prosecutor
clearly stated that Brooks was being used as a lay witness only. His testimony describing
the gun was not based on "scientific, technical, or other specialized knowledge," but
explicitly on his personal experiences using a BB or pellet gun. Accordingly, the complaint
that he was improperly permitted to testify as an expert despite the State's failure to
disclose that he would be used as such is without foundation in the record. Further, there
was no objection suggesting that his testimony was the sort that could only be provided by
an expert. The contention of error is overruled.
          Hart also contends the court erred by refusing to allow him to have Brooks
demonstrate to the jury that the gun was incapable of being fired, and by refusing to allow
him to have the gun tested by his own expert to determine whether it was capable of firing. 
As pointed out, the barrel of the gun was plugged with some type of rubbery substance,
and the slide for loading the gun was "glued in." Under those circumstances, the gun was
clearly inoperable when taken into the possession of the police three days after the attack. 
          Hart contends he should have been allowed his own expert witness because the
State used its own expert to examine and testify about the gun.


 We have already
determined the witness was not qualified as, and did not testify as, an expert. The
argument fails. The contention of error is overruled. 
          Hart further contends he should have been allowed to demonstrate that the gun was
incapable of firing and that Brooks' belief that someone could "shoot out" the obstruction
in the barrel had no basis in reality. The reality is that the requested act could not have
occurred during the trial. The evidence unequivocally shows it was impossible to load the
gun with a BB, because both ends of the barrel were inaccessible—the slide for loading
was glued shut and the end of the barrel was plugged. It might have been possible to pull
out the obstruction for loading, but such removed material would then have to be reinserted
to determine whether one could shoot through the identically reinserted obstruction. It is
apparent such a demonstration was not likely to produce an accurate result. The trial court
did not abuse its discretion in disallowing the demonstration. Further, the evidence clearly
demonstrated to the jury that the gun was incapable of firing. Thus, additional evidence
to that effect by a live demonstration would at best be cumulative of evidence already
before the jury. 
          Under Rule 403, all relevant evidence is admissible unless "its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Tex. R. Evid. 403. Arguably, because part of the definition of
deadly weapon includes anything that "in the manner of its use or intended use is capable
of causing death or serious bodily injury,"


 the question of whether a gun works is relevant
to the issue of whether a deadly weapon was used. However, because the evidence in this
case unequivocally shows that the gun was inoperable, a live demonstration would at best
have been cumulative of the evidence already before the jury. We do not find that the trial
court abused its discretion by refusing to allow the introduction of the demonstrative
evidence suggested. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990) (op. on reh'g).
          Under this contention, Hart also contends he should have been permitted to present
an identical BB gun to the jury—one that had not been altered and clearly showed the
brass end of the barrel to indicate the gun was a BB gun, not a firearm. In support of his
position that similar items may be introduced before the jury, he cites three cases, each
of which involved situations where the actual item was not available for the jury's
inspection, and introduction of a similar item was shown to assist the fact-finder in its
determination.


 In this case, the actual gun was before the jury, and there is no
persuasive reason articulated that would require an identical (but unaltered) gun to be
admitted into evidence. We find no abuse of discretion. See id. 
          Hart next contends the court erred by allowing the State to introduce a pen packet
not previously and timely provided to counsel as required by the trial court's discovery order
and the court's prior ruling on Hart's compliance motion. The pen packet was from
Missouri and contained documents showing two convictions in that state. The packet was
certified June 30, 2004, by the Missouri Department of Corrections, although the State's
counsel informed the trial court it had been received June 29. A new pen packet was
prepared and introduced reflecting the correct certification date. Counsel objected to its
admissibility because it was not timely provided and because the packet contained a Texas
judgment that had been faxed to Missouri. Counsel provides no authority to support his
argument.


 He does not suggest surprise, because he was informed of the
enhancements, along with the cause numbers of the Missouri convictions, by a document
filed October 20, 2003, and notice was therefore provided and timely. See Brooks v. State,
957 S.W.2d 30, 31 (Tex. Crim. App. 1997). He suggests no way in which he was harmed
by the late presentation. 
          It is obvious that the actual packet was not provided before trial, as required by the
court's "Standard Discovery Order." Further, this type of documentary evidence is the type
contemplated by the order. However, the order contains specific limiting language by
which it requires the State to turn over all documents that might be offered at trial and
"which are in the possession, custody or control of the State or any of its agencies." This
pen packet was not in the possession, custody, or control of the State until midtrial. 
Accordingly, the order was not violated on its face, and no error has been shown. 
          Hart next contends the trial court erred by failing to suppress his written statement. 
He argues he was coerced by the officer into giving a statement and thus his statements
and the DNA evidence thereafter obtained should have been suppressed. Our review of
the record reflects that this is a misstatement. The motion to suppress evidently covered
Hart's written consent to obtain DNA samples and a consent to search the residence. 
There is no statement or confession in evidence. 
          In our review of the trial court's ruling on suppression, we recognize that the trial
court is the exclusive trier of fact and judge of the credibility of the witnesses, and our
review of its ruling is limited to a determination of whether the trial court abused its
discretion. The general rule is that an appellate court should afford almost total deference
to a trial court's determination of the historical facts that the record supports, especially
when the trial court's fact-findings are based on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
          Consent must be voluntary to be effective, and if that consent is the result of
coercion, the consent is involuntarily obtained. In determining whether consent was
voluntary, we look to certain relevant factors, such as: the youth of the accused; the
education of the accused; the intelligence of the accused; the constitutional advice given
to the accused; the length of the detention; the repetitiveness of the questioning; and the
use of physical punishment. Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); 
State v. Hunter, 102 S.W.3d 306, 311 (Tex. App.—Fort Worth 2003, no pet.). Additionally,
testimony by law enforcement officers that no coercion was involved in obtaining the
consent is evidence of the consent's voluntary nature. Martinez v. State, 17 S.W.3d 677,
683 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d at 311. Consent is not rendered
involuntary merely because the accused is under arrest. Johnson v. State, 68 S.W.3d 644,
653 (Tex. Crim. App. 2002); Harrison v. State, 144 S.W.3d 82, 88 (Tex. App.—Fort Worth
2004, pet. granted). A police officer's failure to inform the accused that he or she may
refuse consent is a factor to consider in determining the voluntariness of consent; however,
the absence of such information does not automatically render the accused's consent
involuntary. Johnson, 68 S.W.3d at 653; Levi v. State, 147 S.W.3d 541, 545 (Tex.
App.—Waco 2004, pet. ref'd).
          The evidence consisted of a videotape (and its transcription) of the process through
which consent was obtained. Hart points to the parts of the process where he was told that
he "needed to give the officers what they needed in order to clear his name," that it would
be better off in the long run for him and his family that the police go to his residence. There
is no evidence of physical mistreatment; there is evidence Hart was in custody at the time
(although the officer was uncertain himself); and that Miranda


 warnings were read to him. 
Hart was in his early forties at the time of the offense, so youth was not a consideration. 
Although there was a competency hearing, the evidence in that regard showed he had at
least average intelligence, and there was no indication he was not competent at the time
he gave consent. Although unclear, the trial court was informed that Hart had been with
the police approximately an hour before being given the Miranda warnings and that the
consent was given about four hours after he came to the police station. The record does
not show any activity by the officers that would be such as to overpower the free will of the
defendant, and we do not find that the court abused its discretion by denying the motion
to suppress. 
          Hart next contends the trial court erred by failing to grant him a new trial after it was
discovered that juror Stephanie Flynn did not disclose she had been previously married to
Paris police officer Jeff Kinslow, nor did she disclose that Kinslow's uncle had been the
victim of a capital murder during an armed robbery. This information was brought to the
court's attention during the hearing on Hart's motion for new trial. Hart argues Flynn did
not respond truthfully during voir dire and, because of this failure, a juror who he would
have struck was on the jury. 
          When a juror withholds material information during voir dire, the parties are denied
the full opportunity to intelligently exercise their challenges, thus hampering their selection
of a disinterested and impartial jury. Franklin v. State, 138 S.W.3d 351, 355 (Tex. Crim.
App. 2004). A defendant is entitled to reversal if the omission is material and the
defendant has exercised due diligence in eliciting that information. Id. at 356. 
          Counsel asked the panel, "Who all here is involved in law enforcement or has a
close friend, family member, or relative that is involved or has been involved in law
enforcement?" Flynn did not respond. However, Flynn was divorced seven months earlier
from the police officer, which necessarily means that neither Kinslow nor his relatives were
family members or relatives. It is likely she also does not consider her ex-husband a close
friend, and the ex-husband's uncle had been killed over ten years earlier. 
          In his closing questions to the jury panel, Hart's counsel also asked jurors to
respond if they felt that, "You know, if you had asked that question, I would have raised my
hand; and there is no way in the world they would pick me to be on that jury?" The answer
to that question is one that is necessarily internalized, and there is no evidence that bears
on the matter. Cf. Armstrong v. State, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995)
(existence of ongoing close friendship and relationship not reversible when questions
asked not specific enough to draw out the answer).
          The granting or denying of a motion for new trial lies within the discretion of the trial
court. We do not substitute our judgment for that of the trial court, but rather decide
whether the trial court's decision was arbitrary or unreasonable. Salazar v. State, 38
S.W.3d 141, 148 (Tex. Crim. App. 2001); Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App.
1995). Based on the information before the trial court, we cannot find that the court's
decision was unsupportable, nor can we say the questions were not sufficiently specific to
the nondisclosed information to allow a conclusion that Flynn answered untruthfully. The
contention of error is overruled.
          Hart finally contends the trial court erred by showing the jury photographs of the
tattoos of nude women on his thighs. He objected at trial, arguing they were more
prejudicial than probative because of their subject matter, specifically in light of the victim's
previous testimony she could not identify the tattoos—but did testify there were tattoos on
the thighs of her attacker. Hart offered to stipulate there are tattoos on his thighs. The
court overruled Hart's objections and allowed admission of the photographs.


 
          Counsel argues the photographs of the tattoos were of such graphic subject matter
they would sway the jury in some irrational and emotional fashion. The stipulation would
undeniably have served to meet the State's needs in this instance, especially since the
victim could not describe their appearance. The admission of evidence subject to this
objection is controlled by Tex. R. Evid. 403, which provides (among other things) that
evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice. 
          Once a defendant objects to photographic evidence on the basis of Rule 403, the
trial court must weigh its probative value against its potential for unfair prejudice. Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992). An appellate court reviewing the
trial court's decision may reverse only for an abuse of discretion, i.e., only when the trial
court's decision was outside the zone of reasonable disagreement. Id. The trial court must
consider the "host of factors affecting probativeness . . . and balance those factors against
the tendency, if any, that the photographs have to encourage resolution of material issues
on an inappropriate emotional basis." Ladd v. State, 3 S.W.3d 547, 568 (Tex. Crim. App.
1999).
          In this case, although the tattoos are graphic representations of a nude woman, they
are not such that we believe they would necessarily sway a jury into resolving the case
based on emotion rather than reason. We find the decision to be within the zone of
reasonable disagreement. The contention of error is overruled.
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice
 

Date Submitted:      June 2, 2005
Date Decided:         August 24, 2005

Publish