

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HAN OK SONG, | § | No. 08-13-00059-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | County Criminal Court No. 5 |
| | § | |
| THE STATE OF TEXAS, | | of Denton County, Texas |
| | § | |
| Appellee. | | (TC# CR-2011-00259-E) |
| | § | |

# **O P I N I O N**

Han Ok Song appeals his conviction of driving while intoxicated. A jury found Appellant guilty and the court assessed his punishment at confinement for 150 days, probated for fifteen months.[1] We affirm.

## **FACTUAL SUMMARY**

Officer Shane Mentz, a Lewisville police officer, was driving home after his shift at approximately 1 a.m. on November 19, 2010 when he saw a white SUV stopped on a street next to the Sam Rayburn Tollway. Both front tires on the vehicle were flat. Mentz did not stop but he used his in-car radio to notify dispatch about the disabled vehicle. He did not see any other vehicles or people around the vehicle and he continued on his way.

---

[1] The Texas Supreme Court transferred this case from the Second Court of Appeals to the Eighth Court of Appeals pursuant to a docket equalization order. We will decide the case in accordance with the precedent of the Second Court of Appeals. *See* TEX.R.APP.P. 41.3.

Officer Guy Stillwell was dispatched to the scene to check on the disabled vehicle because it presented a traffic hazard. When Stillwell arrived, he observed that the vehicle had two flat front tires, the headlights were on, and the vehicle was running. He walked up to the passenger side of the vehicle and saw that Appellant was seated in the driver's seat and talking on a cell phone. Stillwell asked Appellant if he was okay and what had happened, and Appellant only replied, "Sorry." While attempting to speak with Appellant, Stillwell noticed a strong odor of alcohol in the vehicle and Appellant's eyes were red and glassy. Based on those observations, Stillwell requested that a DWI officer come to the scene. Stillwell also realized Appellant was not fluent in English. Approximately ten to fifteen minutes after Stillwell arrived and while waiting for the DWI officer, an Asian woman arrived at the scene for the apparent purpose of giving Appellant a ride. Stillwell told her she could remain on the scene but she had to wait in her car.

The DWI officer, Christopher Clements, arrived on the scene, and initially spoke with Stillwell. While they were talking, Clements observed that the reverse lights came on for a moment indicating that Appellant, who was still seated in the driver's seat, had put the car in reverse. Clements attempted to speak with Appellant and noticed that he had a strong odor of alcohol on his breath and had red, glassy eyes. Because Appellant spoke Korean and did not speak English, Clements called the dispatcher and requested the assistance of a Language Line translator who spoke Korean. After Clements got the translator on the phone, he began speaking with Appellant. Based on the answers given to his questions through the translator, it appeared to Clements that Appellant could understand the translator. Appellant told Clements he had

drunk three beers after dinner that evening and he had not had anything to drink for five hours. When Clements asked him what had happened to his car, Appellant said that he had fallen asleep because he played golf all day.

Clements then administered three standardized field sobriety tests: the horizontal gaze nystagmus test (HGN); the walk and turn test; and the one-legged stand. Appellant exhibited all six clues on the HGN test, six of eight clues on the walk and turn test, and four out of four clues on the one-legged stand test. Appellant's performance on these tests indicated that he was intoxicated. Based on his training, experience, and observation of Appellant, Clements formed an opinion that Appellant had lost the normal use of his mental and physical faculties due to the introduction of alcohol into his body. Clements arrested Appellant for driving while intoxicated and put him in the backseat of the patrol car.

With the assistance of the Language Line translator, Clements read the DIC-24 statutory warnings to Appellant. Appellant agreed to provide a breath specimen. The camera inside of the patrol car made a visual recording of Clements reading the DIC-24 to Appellant, but it did not record the audio. Clements was unaware until he watched the video later that evening that the equipment had not recorded the audio portion of the events inside of the car. Clements then transported Appellant to the jail and he called the Language Line translator after they arrived in the Intoxilyzer room. Clements again asked Appellant, through the Language Line translator, whether he wanted to provide a breath specimen and Appellant answered affirmatively. Appellant provided two breath specimens and the analysis of those specimens showed an alcohol concentration of .165 (first specimen) and .158 (second specimen) per 210 liters.

Appellant's wife, Jae Lee, testified on his behalf at trial. Appellant went golfing with Jae's brother and some other people and then went to eat afterwards. At approximately midnight, she picked up Appellant at the restaurant and was driving home when they had two flat tires. Appellant was asleep and she woke him up to tell him what had happened but he became upset with her and they argued. Jae left Appellant who was still seating in the front passenger seat of the SUV and began walking home but she called her sister to pick her up. Jae's sister took her home. While Jae was with Appellant, he did not drive the vehicle.

Jae's sister, Dong Young Lee, also testified at trial. She went to the apartment to pick up Appellant. Dong Young left her vehicle at the apartment and she instead drove Appellant's SUV because it was larger and could more easily accommodate the group. She explained that Appellant often asked her to drive because she was more familiar with the streets. They golfed until around 6 p.m. and went to a Korean restaurant. There they stayed until around 11 p.m. when they visited a karaoke bar. Jae picked up Appellant around midnight and left in the SUV with Jae driving. Other witnesses testified that Jae picked up Appellant at the karaoke bar and she was driving the SUV when they left.

Appellant also testified that Jae picked him up at the karaoke bar and they left in the SUV with Jae driving. He fell asleep because he was tired and she shook him awake to tell him they had two flat tires. They argued and she got out of the car to walk home. He got back in the car because it was cold and called his sister-in-law to pick him up. He did not recall whether he got into the driver's or passenger's side of the vehicle. He denied moving or attempting to move the vehicle. He did not remember whether the officer read him a form while they were in the patrol

- 4 -

car.  The jury rejected Appellant's defenses and found him guilty of driving while intoxicated.

## ADMISSION OF BREATH TEST RESULTS

In his first point of error, Appellant contends that the trial court erred by denying his motion to suppress the breath test results because Officer Clements did not provide him with the required statutory warnings.  We understand Appellant to argue that his consent was not valid because the State failed to prove that he had knowledge of the statutory consequences of his refusal to consent.

*Relevant Law and Standard of Review*

Any person who is arrested for driving while intoxicated is deemed to have given consent to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance.  *Fienen v. State*, 390 S.W.3d 328, 332 (Tex.Crim.App. 2012); TEX.TRANSP.CODE ANN. § 724.011(a)(West 2011).  Subject to certain exceptions not applicable in this case, a person retains an absolute right to refuse a test.  *Fienen*, 390 S.W.3d at 332-33; TEX.TRANSP.CODE ANN. § 724.013.[2]  A person's refusal must be strictly honored.  *Fienen*, 390 S.W.3d at 333; *McCambridge v. State*, 712 S.W.2d 499, 504 n.16 (Tex.Crim.App. 1986).

A person arrested for driving while intoxicated, if over the age of 21, must be warned that refusal to submit to a breath test will result in the following consequences:  (1) evidence of the refusal will be admissible against the person in court; and (2) the person's driver's license will be

---

[2]  The Court of Criminal Appeals held in *State v. Villarreal*, --- S.W.3d ---, 2014 WL 6734178 (Tex.Crim.App. November 26, 2014) that the warrantless, nonconsensual testing of a DWI suspect's blood does not categorically fall within any recognized exception to the Fourth Amendment's warrant requirement and it cannot be justified under a general Fourth Amendment balancing test.  *Villarreal* is inapplicable to the instant case.

suspended for not less than 180 days. TEX.TRANSP.CODE ANN. § 724.015(1)-(2)(West Supp. 2014); *State v. Amaya*, 221 S.W.3d 797, 800 (Tex.App.--Fort Worth 2007, pet. ref'd). A person over the age of 21 must also be warned that if he submits to the test and an analysis of the specimen shows he had an alcohol concentration of a level specified by Chapter 49 of the Penal Code, the person's license to operate a motor vehicle will be automatically suspended for not less than 90 days, whether or not the person is subsequently prosecuted as a result of the arrest. TEX.TRANSP.CODE ANN. § 724.015(4).

A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Fienen*, 390 S.W.3d at 333; *Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex.Crim.App. 2011). The State must prove voluntary consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 333. The question of whether a person validly consented must be determined from the totality of the circumstances and from the point of view of the objectively reasonable person. *Id*.

When the voluntariness of consent is raised in a motion to suppress, as in this case, the trial court must consider the totality of the circumstances in determining whether the State proved consent by clear and convincing evidence. *See Fienen*, 390 S.W.3d at 335. In our review, we consider the totality of the circumstances in light most favorable to the ruling and uphold the ruling unless it is clearly erroneous. *Id*. at 335. Further, we give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id*. at 335, *quoting Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Questions of law

- 6 -

and "mixed questions of law and fact" that do not depend on an evaluation of credibility and demeanor are reviewed *de novo*. *Fienen*, 390 S.W.3d at 335. The voluntariness-of-consent issue is a mixed question of law and fact. *State v. Hunter*, 102 S.W.3d 306, 309 (Tex.App.--Fort Worth 2003, no pet.). In this case, resolution of the consent issue depends on credibility and demeanor. Consequently, we must review the trial court's ruling with almost total deference. *Id.*

*Analysis*

Officer Clements testified in a hearing outside of the jury's presence and again during trial regarding the procedures he followed after arresting Appellant for DWI. Clements placed one copy of the DIC-24 form on Appellant's lap and read the form to him with the assistance of the Language Line translator. Clements explained to the trial court that his in-car camera failed to record the audio but the video confirms that he was reading the DIC-24 to Appellant because it shows his lips moving while he read and then pausing while the translator spoke to Appellant in Korean. After Clements finished reading the form, he asked Appellant whether he would like to give a specimen of his breath or blood for testing and Appellant said that he would. When they arrived at the Intoxilyzer room at the jail, Clements called the Language Line translator and with the translator's assistance he again asked Appellant whether he would give a specimen of his breath or blood. Appellant again answered, "Yes." Appellant testified at the pretrial hearing that he did not remember Officer Clements reading the statutory warnings from the DIC-24 when they were seated in the patrol car or when they were in the Intoxilyzer room. If he had known he had a right to refuse, he would not have provided a breath specimen. Noting that Appellant had not testified that the officer failed to read him the DIC-24 warnings and had only stated he did

not remember, the trial court denied the motion to suppress the breath test results.

The parties relitigated the consent issue when the trial resumed before the jury. In addition to testifying that he read the DIC-24 to Appellant through the translator, Officer Clements testified that it appeared to him that Appellant could understand the translator. He based his opinion on the way Appellant answered the questions Clements asked him. Consistent with his testimony given during the suppression hearing outside of the jury's presence, Appellant told the jury he did not remember whether the officer read him a form while they were in the patrol car. When pressed by his attorney and asked whether he did not remember or whether it did not happen, Appellant stated, "In the car there was no interpreter interpreting at all." Appellant also testified that he did not understand the interpreter.

The trial court had the opportunity to hear the testimony of Officer Clements and Appellant on the issue whether Clements read the statutory warning to Appellant and the trial court resolved the issue against Appellant. We are required to give almost total deference to the trial court's implied credibility determinations and its ruling. Having reviewed the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude that the State proved by clear and convincing evidence that Appellant voluntarily consented to giving a specimen of his breath for testing. The trial court did not abuse its discretion by denying the motion to suppress. Point of Error One is overruled.

## HEARSAY

In Point of Error Two, Appellant contends that the trial court abused its discretion by overruling his hearsay objection and admitting the translation of his statements by the Language

Line translator on the DVD recordings. Appellant does not identify the DVD recording by exhibit number but we understand Appellant's argument to be directed at the portions of the DVD recordings, State's Exhibits 1 and 2, which contains the English translation of Appellant's statements by the Language Line translator.[3] Appellant argues that the translator's statements are hearsay because the State failed to timely file the business records affidavit related to Language Line as required by TEX.R.EVID. 902(10). We construe this argument as asserting that the State failed to establish that the translator was qualified.

*Standard of Review*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010); *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex.Crim.App. 2009). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

*Texas Rule of Evidence 801(e)(2)(C) and (D)*

Hearsay is an out-of-court statement offered in evidence for the truth of the matter asserted. TEX.R.EVID. 801(d). Under Rule 801(e)(2)(C) and (D), an admission by a party-

---

[3] State's Exhibit 1 is the video recording made by Clements' in-car camera at the scene and includes the events which occurred prior to Appellant's arrest. It also includes the video recording made by Clements' in-car camera when he read the DIC-24 statutory warnings to Appellant inside of the patrol car. State's Exhibit 2 is the video made inside of the Intoxilyzer room at the jail. It depicts Appellant consenting to the breath test. The State also introduced into evidence State's Exhibit 3 which is the video recording made by Officer Stillwell's in-car camera at the scene.

opponent is not hearsay if it is offered against the party and is: (C) a statement by a person authorized by the party to make a statement concerning the subject; or (D) is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. TEX.R.EVID. 801(e)(2)(C), (D). An out-of-court translation of a party's out-of-court statement is admissible under Rule 801(e)(2)(C) or (D) if the proponent can demonstrate that the party authorized the interpreter to speak for him on the particular occasion or otherwise adopted the interpreter as his agent for purposes of translating the particular statement. *Saavedra*, 297 S.W.3d at 349. In determining whether a party has in fact adopted an interpreter as his agent, the trial court must consider four factors: (1) who supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skills; and (4) whether actions taken subsequent to the translated statement were consistent with the statement as translated. *Saavedra*, 297 S.W.3d at 348-39. In addition to demonstrating whether the interpreter was acting as agent for the party, these factors also relate to "the ultimate reliability of the proffered evidence." *Saavedra*, 297 S.W.3d at 349. As the proponent of the evidence, the State had the burden to establish that the out-of-court translation of Appellant's out-of-court statements was admissible under Rule 801(e)(2)(C) or (D). *Id.*

Appellant restricted his objection at trial to the third factor, but we will examine the record as it applies to all four factors. Testimony showed that Language Line is a part of Lewisville's 911 operations. The Language Line translators are available by telephone to translate 911 calls for the dispatchers. The program is also available to assist police officers

communicating with individuals who do not speak English or another language understood by the officer. There is no evidence in the record that would permit an inference that the interpreter had any motive to mislead or to distort. Appellant is correct that the State failed to offer any evidence regarding the interpreter's qualifications and language skills.[4] The State did not offer into evidence the business records of Language Line Services which would have established the company's policies, procedures, and standards for its interpreters. The complete lack of evidence regarding the interpreter's qualifications and skills cuts against a finding of reliability. But there is evidence in the record that indicated Appellant understood the interpreter because his answers to questions asked by Officer Clements were consistent with the questions. Additionally, in the portion of the recording made in the Intoxilyzer room, Officer Clements asked Appellant whether he wanted to give a specimen of his breath for testing. After listening to the interpreter's translation of this question, Appellant replied, "Yes" without any apparent confusion or hesitation, and he subsequently gave a specimen of his breath for testing. The record also demonstrates that Appellant communicated with Officer Clements through the interpreter for an extended period of time at the scene, in the patrol car, and in the Intoxilyzer room at the jail. Based on this record, the trial court could have reasonably found that Appellant adopted the Language Line translator as his agent. *See Trevizo v. State*, No. 08-12-00063-CR, 2014 WL 260591, at *6-7 (Tex.App.--El Paso January 22, 2014, no pet.)(not designated for publication). We conclude that the trial court did not abuse its discretion by overruling Appellant's hearsay objection and admitting his translated statements into evidence at trial.

---

[4] The State did not offer into evidence the business records of Language Line Services which would have established the company's policies, procedures, and standards for its interpreters.

Point of Error Two is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his final point of error, Appellant challenges the sufficiency of the evidence supporting his conviction of driving while intoxicated. More specifically, he argues that the State failed to prove beyond a reasonable doubt that he operated the SUV.

### *Standard of Review*

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virg*inia standard. *Brooks v. State*, 323 S.W.3d 893, 895-96 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing, substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).

In our review, we consider both direct and circumstantial evidence and all reasonable

inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Arzaga*, 86 S.W.3d at 777.

A person commits the offense of driving while intoxicated if he is intoxicated while operating a motor vehicle in a public place. TEX.PENAL CODE ANN. § 49.04(a)(West Supp. 2014). Appellant does not challenge the sufficiency of the evidence supporting the jury's finding that he was intoxicated or that it was a public place. He instead limits his argument to whether the State proved beyond a reasonable doubt that he operated the vehicle. The word "operating" is not defined in the Texas Penal Code. It is a common term that has not acquired a technical meaning and may be interpreted according to its common usage. *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex.Crim.App. 2012). When assessing sufficiency of the evidence to prove the "operating" element of driving while intoxicated, the Court of Criminal Appeals has held that "operate" means taking action to affect the function of a vehicle in a manner that would enable the vehicle's use. *Denton v. State*, 911 S.W.2d 388, 390 (Tex.Crim.App. 1995). The State is not required to prove that the defendant drove the vehicle. As observed by the Court of Criminal

Appeals in *Denton*, "while driving does involve operation, operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389.

Officer Stillwell arrived on the scene sometime after 1 a.m. and found a white SUV in the roadway with both front tires flat. The vehicle was running and Appellant was asleep in the driver's seat. Appellant's argument focuses on the defense witnesses who testified he did not drive the vehicle at all that day or evening, but the jury was free to disbelieve those witnesses. He also argues that the evidence showed he sat in the car with it running because it was cold that evening. Appellant fails to consider Officer Clements' testimony that Appellant placed the car in reverse and then put it back in park while the officers were standing by the vehicle. When the evidence is taken in the light most favorable to the verdict, we conclude it is sufficient to permit a rational trier of fact to conclude that Appellant operated the vehicle while intoxicated. *See Hearne v. State*, 80 S.W.3d 677, 680 (Tex.App.--Houston [1st Dist.] 2002, no pet.)(evidence was legally sufficient to show defendant operated the vehicle where police officer found the truck in a moving lane of traffic, defendant was in the driver's seat, the truck was registered to defendant, and no other people were found near the scene); *Milam v. State*, 976 S.W.2d 788, 789 (Tex.App.--Houston [1st Dist.] 1998, pet. ref'd)(evidence sufficient to prove defendant operated vehicle where defendant was found asleep in driver's seat with engine running, vehicle was in gear, driver's foot was on brake, and driver put car in reverse upon being awakened); *Barton v. State*, 882 S.W.2d 456, 459-60 (Tex.App.--Dallas 1994, no pet.)(evidence sufficient to prove defendant operated vehicle where driver was asleep at wheel with feet on clutch and brake, engine idling, and car in roadway protruding into intersection, and driver engaged clutch and changed gears

- 14 -

upon being awakened by police).  Point of Error Three is overruled.  Having overruled each of

Appellant's points of error, we affirm the judgment of the trial court.


February 13, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

(Do Not Publish)